Gaston, Judge,
 

 after stating the case as abbve, proceeded' as follows: The Court has felt much perplexity in forming an entirely satisfactory opinion in this base. Upon the best consideration, however, which it has been able to givil to the case, it is of opinion that the plaintiffs are entitled to relief upon the second ground taken by them in their bill; and, being of that opinion, it forbears from forming any judgment upon the first ground, as not necessary for the purposes of justice. Nothing, indeed, short of necessity, could induce us to make a judicial decision upon questions involvirig thb construction of the law of New York, wheré that law has not been settled by the decisions of its dóméstic tribunals. In undertaking such a duty, with the very imperfect lights we have, we could scarcely hope to avoid error. It has been by no means an easy task to fix the meaning of the agreement of the ifith of Febrüafy. 1838. The subject matter of that agreement was money, paid into the tréastny of New York, for the use of the estcite of the late Mr. Graham; and if to be regarded as nloriey to all purposes, yet, as the proceeds of property disposed of by his will, it was subject, as far as money could be, to the limitations in that will declared in regard to all his property. According to these limitations, Mrs. Graham was entitled to the use and benefit of it for the term of her life; but who were to be the proprietors Of it after her death, was then unknown. If her children, Hamilton Graham, Mrs. Haves and Mrs. Haywood should ail survive their mother, they are to have it ;ls tenants in coirimon. If one or more of them should die before their mother, and die childless,
 
 *320
 
 it was to vest in the survivors or survivor wholly. But, if any ^lem so dying before their mother, should leave children, then such children were to take the share which the father or mother would have had, if surviving Mrs. Graham. ‘ It is to be remarked, too, that Mrs. Graham had not only the interest in this money during life, under her husband’s will, but that she was wholly and solely the executrix of that will. It cannot be supposed, unless the agreement explicitly so declared, that it was the intent of the parties to the agreement, to affect thereby the ultimate rights in contingency. And, so far from such a declaration, the instrument, in the strongest terms, disclaims such a purpose:' “It being the true agreement of the parties that Mrs. Graham surrenders her interest to said money, without prejudice to the rights and interests of all other persons.” The agreement contains no words of gift, sale, transfer or assignment; will be found to use no technical terms; and professes merely to set forth an arrangement which has been made in respect to the receipt, custody and future forth-coming of the money. In the beginning, it declares Mrs. Graham to relinquish, and, in a subsequent part, she is said to surrender her interest therein. But, manifestly, these terms cannot be understood to mean a technical surrender; for there can be no surrender of a particular estate, except to those having a vested interest in remainder or reversion. They mean no more than her consent to forego the exercise of her right to the use of this money, and to permit the enjoyment of it by others. The inquiry is, who are those for whose benefit she has, in this sense, relinquished her interest — and the answer, we think, must be, her children. It was a natural direction for her benevolence to take, from the promptings of maternal affection; it was a proper direction, as one conforming most to the spirit of her husband’s will. Although these children had no vested interest in the money, yet they stood in the foremost rank of expectants, and were the persons most likely, according to the course of nature, to become entitled to it. The money was lying in the city treasury inactive — she did not want the use of it, and she was willing that her children might use it during her life. The money, too, was the substitute of, and equivalent for, real estate; and whether it had or had not the properties of
 
 *321
 
 such, it was natural for all concerned and intending to out fully the late Mr. Graham’s will, to make all their ar-rangementsso as to secure the enjoyment of it, as it would have been enjoyed, if real estate. And this purpose, we think, is substantially admitted by the answer, and may be collected from the instrument, when its different parts are attentively considered. The instrument purports, in the commencement, to be made for carrying out into effect an agreement in relation to the money so paid in for the estate “ between the parties interested.” It cannot be questioned, we think, but by these words are intended Mrs. Graham on the one part, and her children on the other; for though, in the strict sense of the words, they were not interested in the estate, yet they were the persons most likely to be interested therein; and, in common parlance, might have been spoken of as persons actually interested. This agreement, then, is set forth, viz. that she is “ to relinquish to the other parties” her interest in the said money, so that it may be received by the other parties. The instrument then proceeds to state
 
 how
 
 it is to be received by the other parties, viz. thus: H. C. Graham is to receive one third; W. H. Haywood, Jun., for himself and wife, another third; and J. P. Daves, for himself and wife, another third. If the phrase had been, W. H. Haywood is to receive for his wife one third, and J. P. Daves is to receive for his wife another third, perhaps the intent of the agreement would have been more clearly manifested, that in thus receiving, the husbands were but the agents whereby their wives respectively were to receive. Yet the words erm ployed are not unapt for the purpose of declaring that they take in right of their wives. The benefit of this surrender was for the wives; but, as during the coverture, the money would be held by the husbands, without accountability for interest, the money might thus be said, without impropriety, to be received for themselves and their wives. The words are plainly inconsistent with the supposition of a gift of Mrs. Graham’s right to
 
 the husbands.
 
 Then follow the covenants of the son, and of the husbands of the daughters. The son had received a third of the money for himself, as of the bounty of his mother, The only purpose proper to be secur-.
 
 *322
 
 ed by his covenant, in relation to this money, was to have it forth-coming to answer the ulterior purposes of his father’s will, if, by any casualty, the property thereof, instead ofvest-ing in him, as was anticipated, should vest in some other person or persons — and his covenant is so drawn accordingly; and it is expressed to be for the use of those “ who may thereafter become entitled to the said sum by him received.” The covenants of the husbands are in different words; and, it must be admitted, are more obscure. J. P. Daves covenants with the other
 
 parties
 
 — here intending, no doubt, the parties executing the.instrument — “for. the use of his wife, or any other person who may hereafter become entitled to the money received by him — that upon the happening of any Contingency whatsoever, that vests a right to receive the money by him received from the estate of Edward Graham, deceased, he will repay the same, or cause it to be done, but without interest, until the contingency happens.”
 

 Upon
 
 these words,
 
 it-is not clear but that it was the sole purpose of the covenant, to secure the forthcoming of the money at the death of Mrs. Graham, either to his wife or to any other person or persons, who might then, according to the provisions of the will, be entitled to the ownership of it. And some weight seems to be given to this contraction, by the phrase “ any contingency which
 
 vests a right
 
 to receive it.’; We rather think, however, without examining the instrument further, that the covenant ought to be interpreted in a broader sense. It is reasonable to intend it to have been designed to cover the performance of all the duties imposed by, and resulting from, the arrangement testified by the instrument. The money received by him, under it, was received/or
 
 Ms
 
 wife, to whom the use thereof had been relinquished by Mrs. Graham. It became his duty to preserve the fund inviolate, as well for her benefit, as for the benefit of all who might he interested therein. His agency, as husband, would terminate with the marriage. If, at the termination of the marriage by his death, Mrs. Grahapr should be alive, then, under the arrangement, his wife was entitled to the use of the money, and therefore entitled to receive it; $nd in case she should ultimately survive her mother, would
 
 *323
 
 become entitled to keep it as owner; but if'Mrs. Graham should survive her, then the right to the prórerty would go over, under the special limitations of the will, to her children, or to her brother and sister. If the marriage should not terminate during Mrs. Graham’s life, then, both the temporary interest, and the final property in the money, would be Mrs. Daves’, and of course, by the operation of the law, become absolutely his — and if it terminated during Mrs. Graham’s life, by the Death of Mrs. Daves, he, as husband, was to succeed to her right therein, as so much money, under her mother’s relinquishment, or by way of analogy to the law of curtesy, in respect of real property. The covenant, therefore, if it means any thing, must be interpreted to have been
 
 designed,
 
 as a security for rights that were to be called into active existence, by the contingency of his dying before his wife, and,during the life of Mrs. Graham — and, it is fair to hold, upon the strong and general terms used, that
 
 all
 
 rights, whether of his wife or others thus depending thereon, were to be protected by that covenant. Nor is there much force in the inference drawn from the technical import of the words “vest a right.” Throughout the instrument, technical terms are scarcely to be found at all. And,'in the immediately preceding covenant of Hamilton Graham, where the phrase “vest a right,” in its technical sense, world have been peculiarly appropriate, (for, upon the contingency there contemplated, the right to the money would ®esfunder the'will of Mr. Graham,) the technical phrase is not used, but instead thereof, are found the inartificial expressions “ whereby the same shall become due and payable.” But whatever interpretation wehnight put upon these covenants,
 
 per se,
 
 without further explanation, we think a sufficient explanation for the purposes of the present enquiry is afforded in a subsequent part of the instrument. It is declared that “ these covenants shall be construed to operate for the benefit of Mrs. Daves and Mrs. Haywood, although they are severally the wives of J. P. Daves and Wm. H. Haywood, unless they choose to execute a release in due formof law, to discharge
 
 their right under this deed.”
 
 Now, no right was, or could have been derived to them,
 
 under this
 
 deed, but what passed thereby from Mrs.
 
 *324
 
 Graham; that is to say, a right to the money during her life. It is expressly provided that the covenants shall operate for
 
 their benefit,
 
 unless they release
 
 this
 
 right. The covenants therefore must be construed to operate for the protection of this r¡ght — and to stipulate against the only injury which this right could sustain, by providing that the money should be forthcoming to the wife, if the husband should die before her, and during the continuance of this her temporary interest. In the case of
 
 Benbury
 
 v. Benbury, decided at this term, the principle was clearly recognized, that beneficial interests of this description, secured by the covenant of a testator or intestate, are, in the administration of his assets, to be regarded as of the same dignity with the claims of specialty creditors — and that, where the executor or administrator is the person in whose name the legal right on the covenants must be asserted, it is his duty to retain assets for their satis-action, as against creditors-of equal dignity.
 

 It is the opinion of the court, therefore, and will be so declared, that the defendant do pay into this court, the sum of $3,548:75 cents; and that the same shall be secured under a scheme, to be approved of by the court, according to the rights of the plaintiff, Elizabeth, therein, under the agreement aforesaid, of the 16th February, 1838; and the rights of the infant plaintiffs, and of any others who may hereafter claim, under the limitations in the will of the late Mr. Graham. And the cause is reserved for that purpose, and for further directions,
 

 Per Curiam. Decree accordingly.