INTERNATIONAL TEXT-BOOK COMPANY *v.* WEISSINGER ET AL.

[No. 19,822.   Filed November 25, 1902.   Rehearing denied April 1, 1903.]

CONSTITUTIONAL LAW.—*Work and Labor.*—*Assignment of Wages.*— *Master and Servant.*—The act of 1899 (Acts 1899, p. 193, §§7059, 7059c Burns 1901), prohibiting the assignment by employes of future wages, is not unconstitutional as placing an unreasonable restraint upon the right of a citizen to contract in violation of §1, article 1, of the state Constitution, or that it deprives any person of property without due process of law in violation of §1 of the fourteenth amendment of the federal Constitution.

From Clark Circuit Court; *J. K. Marsh,* Judge.

Action by the International Text-Book Company against Horace L. Weissinger and another. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*J. W. Fortune, S. N. Chambers, S. O. Pickens* and *C. W. Moores,* for appellant.

*M. Z. Stannard,* for appellees.

DOWLING, J.—The appellant (formerly the Colliery Engineer Company, but afterwards, by change of name, the International Text-Book Company) sued the appellees, Horace L. Weissinger and the American Car & Foundry Company, upon an order alleged to have been executed by the said Weissinger, and accepted by the said American Car & Foundry Company, of which the following is a copy:

"June 7, 1899.   To the American Car & Foundry Company: Please pay the Colliery Engineer Company of Scranton, Pa., proprietors of the International Correspondence Schools, the sum of $2 per month, from such wages as may be due me, until the total sum of $61.25 is paid them for a complete architectural course, purchased by me. First payment on this order to be made from money due on next pay-day succeeding date of this order. Horace L.

Weissinger. Occupation: Carpenter. Address: New Albany, Indiana. Shops employed in: * * * Under whom employed: F. Kahler. Paymaster: W. C. Ruddell. Name and title of official to whom this order is to be sent for collection."

A demurrer to the complaint was sustained upon the ground that the instrument which was the foundation of the action was, in legal effect, an assignment of future wages to become due to the appellee Weissinger from his co-appellee the American Car & Foundry Company, and was in violation of §§1 and 4 of an act of the legislature of this State approved February 28, 1899 (Acts 1899, p. 193, §§7059, 7059c Burns 1901), which are in these words: "Section 1. That every person, company, corporation or association employing any person to labor, or in any other service for hire, shall make weekly payments for the full amount due for such labor or service, in lawful money of the United States to within six days or less of the time of such payment; but if, at any time of stated payment, any employe as aforesaid shall be absent from his regular place of labor or service, he shall be paid in like manner thereafter on demand: Provided, that this act shall not apply to any employe engaged by a common carrier in interstate commerce. * * * Section 4. The assignment of future wages, to become due to employes from persons, companies, corporations or associations affected by this act, is hereby prohibited, nor shall any agreement be valid that relieves said persons, companies, corporations or associations from the obligation to pay weekly the full amount due, or to become due, to any employe in accordance with the provisions of this act: Provided, that nothing in this act shall be construed to prevent employers advancing money to their employes."

The appellant refusing to amend its complaint, judgment was rendered for the appellees. The ruling on the demurrer is the error assigned.

For the reversal of the judgment, counsel rely upon two propositions, which are thus stated in their brief: "(1) Assignments of future wages to be earned are held to be valid and legal contracts by the weight of authority of the courts of this country.   (2) Sections 1 and 4 of chapter 124 of the acts of 1899 (Acts 1899, p. 193) are unconstitutional for the reason that they prohibit and limit the right of a citizen of Indiana to make contracts in violation of article 1, §1 of the bill of rights of the Constitution of the State of Indiana, and of §1 of the fourteenth amendment to the Constitution of the United States."

The writing referred to in the complaint, although in form an order for the payment of money, operated as an assignment of the wages mentioned in it.   *Gray* v. *Trafton,* 12 Mart. (La.) 702; *Daves* v. *Haywood,* 22 N. C. 313. For the purposes of this case, it may be admitted that assignments of future wages to be earned are valid contracts, provided they are not prohibited by a statute which the legislature has the constitutional authority to enact.   This qualified admission leaves for decision only the question of the constitutional validity of the two sections above set out.   If it can be said that these sections contain unreasonable restraints upon the liberty of the citizen, or that they deprive any person of property without due process of law, then they fall within the express prohibition of §1, article 1, of the Constitution of this State, or of §1 of the fourteenth amendment of the Constitution of the United States.

These sections do, unquestionably, limit and restrict in a very marked degree the liberty of the citizen to enter into contracts which, in the absence of the statute, he would have the right to make.   By §4 he is absolutely disabled from making an assignment of future wages to be earned by him.   Such a prohibition can be sustained only on the ground that some public interest is involved, and that it is of such a character as to render it a legitimate subject of legislative regulation or control.   The wages of laborers

have been the subject of legislative solicitude and action in this State for many years, and in a great variety of forms. The stockholders of corporations, organized for manufacturing or mining or chemical purposes, were made individually liable for all debts due and owing laborers, servants, and apprentices for services rendered, without limit as to the amount of such debts. To all other creditors of the corporation, such stockholders were liable only to an amount equal to the stock held by them respectively. 1 R. S. 1852, p. 360, §11.

By the act of August 24, 1875 (Acts 1875, s.s., p. 29, §5077 Burns 1901), the stockholders of every company organized to carry on any kind of manufacturing or other business authorized by that act were declared to be individually liable for all debts due and owing to laborers, servants, apprentices, and employes for services rendered such corporations, although not liable for other debts to any amount except to the extent of the stock subscribed by them.

Individual liability of the stockholders of railroad companies to laborers for work done in the construction of such roads was created by the general railroad act of 1852, and was afterwards affirmed or extended by later statutes. 1 R. S. 1852, p. 421, §38, p. 423, §10; Acts 1865, s.s., p. 120, §38; §§5198, 5231 Burns 1901.

Wages to an amount not exceeding $50, due to any employe for work and labor performed within two months of the death of a decedent, were made a preferred claim against the estate by the act of 1881. Acts 1881, p. 423, §2534 Burns 1901, §2378 R. S. 1881.

So, too, the wages of each employe to an amount not exceeding $50 earned within the preceding six months, are made a preferred claim where the property of the employer is seized on mesne or final process, or the business is suspended by the action of creditors, or put into the hands of any assignee, receiver, or trustee. §7051 Burns 1901. In certain cases they are exempted from attachment, garnish-

ment, or proceedings supplementary to execution.   §§970-972 Burns 1901.

The act of March 3, 1885 (Acts 1885, p. 36), made debts for manual or mechanical labor a preferred claim against all persons and corporations when the property of the debtor passed into the hands of an assignee or receiver, and they were required to be paid in full before the payment of any other debts excepting claims for the costs and expenses of the proceedings.

Many other statutes might be mentioned, but those referred to sufficiently indicate the importance of the subject of wages in the estimation of the legislature, and the variety of cases in which attempts have been made to protect the interests of the wage-earner.   The reasons for such legislative supervision and control are readily found in the number and situation of ordinary laborers and employes. According to the last census, the number of wage-earners employed in manufacturing and mining industries alone in this State was 155,956.   The amount of wages paid to them annually is stated at $66,847,317.   The census report is but partial and imperfect, as a large number of companies and corporations, engaged in manufacturing and mining, failed to make the returns required from them.   No statistics are furnished by the census of the number of wage-earners employed in other occupations besides those of manufacturing and mining.   The figures herein stated are sufficient, however, to show how large a portion of the citizens of this State fall within the classification of wage-earners.   A large proportion of the persons affected by these statutes of labor are dependent upon their daily or weekly wages for the maintenance of themselves and their families.   Delay of payment or loss of wages results in deprivation of the necessaries of life, suffering, inability to meet just obligations to others, and, in many cases, may make the wage-earner a charge upon the public.   The situation of these persons renders them peculiarly liable to imposition and injustice

at the hands of employers, unscrupulous tradesmen, and others who are willing to take advantage of their condition. Where future wages may be assigned, the temptation to anticipate their payment, and to sacrifice them for an inadequate consideration, is often very great. Such assignments would, in many cases, leave the laborer or wage-earner without present or future means of support. By removing the strongest incentive to faithful service,—the expectation of pecuniary reward in the near future,—their effect would be alike injurious to the laborer and his employer. It is clear that the object of the act of 1899, *supra,* was the protection of wage-earners from oppression, extortion, or fraud on the part of others, and from the consequences of their own weakness, folly, or improvidence. We can not say that no just ground existed for such legislative interference for so commendable a purpose.

The disability imposed by the act of 1899, *supra,* is similar to that which renders married women incompetent to bind themselves or their property by contracts of suretyship. §6964 Burns 1901. It does not differ in its nature from those humane rules of the law which make void agreements before judgment to waive the benefit of exemption laws, and of laws providing for a stay of execution, or regulating the rights of the parties under mortgages on household goods. *McLane* v. *Elmer,* 4 Ind. 239 ; *Maloney* v. *Newton,* 85 Ind. 565, 44 Am. Rep. 46 ; *Hancock* v. *Yaden,* 121 Ind. 366, and cases cited on pp. 369, 370, 6 L. R. A. 576, 16 Am. St. 396 ; *Zumpfe* v. *Gentry,* 153 Ind. 219.

In Cooley, Const. Lim. (6th ed.), 744, in an enumeration of some of the cases in which the police power of the State may be exercised without transcending the limits of constitutional authority, the author says: "So, for the protection of laborers against the oppression of employers, it is held competent to forbid their being paid in anything else than legal tender funds." A decision to this effect was made by this court in *Hancock* v. *Yaden, supra,*

In a very recent case in the Supreme Court of the United States, an act of the legislature of the state of Tennessee requiring the redemption in cash of store orders or other evidences of indebtedness issued by employers in payment of wages due to employes was held valid. In the course of its opinion the court said: "But it is also true that, inasmuch as the right to contract is not absolute in respect to every matter, but may be subjected to the restraints demanded by the safety and welfare of the state and its inhabitants, the police power of the state may, within defined limitations, extend over corporations outside of and regardless of the power to amend charters. *Atchison, Topeka & Santa Fe Railroad* v. *Matthews,* 174 U. S. 96." *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13, 22, 22 Sup. Ct. 1, 46 L. Ed. 55.

If the legislature, in the exercise of its general police power, to secure the safety and welfare of the State may deprive the laborer and his employer of the right to contract for the payment of wages in anything else than legal tender notes or other lawful money, we do not perceive why it may not, also, in the exercise of that power prohibit the assignment of wages before they are earned. The reason and public necessity are as clear and cogent in the one case as in the other. The purpose of the legislation in each is to protect a large and important class of citizens from imposition, unfair dealing, and the consequences of their own improvidence. The act of February 28, 1899 (Acts 1899, p. 193), applies equally to all citizens, and is not subject to the objection of a partial or improper classification. The sections before us do not extend to wages which have been earned, but merely suspend the right to dispose of wages by assignment until they are earned. They render void an agreement into which no prudent man, ordinarily, would wish to enter.

The court did not err in sustaining the demurrer to the complaint. Judgment affirmed.