(February 5, 1916.)

## HARRY OLSON et al., Respondents, v. IDORA HILL MINING COMPANY, a Corporation, Appellant.

## CLARK G. NORRIS, Respondent, v. IDORA HILL MINING COMPANY, a Corporation, Appellant.

## PETER PROBACH, and J. H. SMITH, Respondents, v. IDORA HILL MINING COMPANY, a Corporation Appellant.

[155 Pac. 291.]

CONSTITUTIONAL LAW—STATUTORY CONSTRUCTION—LABORER'S LIEN ACT
    —OBJECT OF—MODIFICATION OF JUDGMENT.

1. Chapter 170, Sess. Laws 1911, p. 565, which provides for the protection of employees who are discharged from employment without receiving compensation due them from employers, is a legitimate exercise of the police power of the state, and is not an infringement upon the liberty of contract in respect of labor, and does not deprive the employer or the employee of the liberty or right to enter into any contract, nor take property from the employer without due process of law, nor single out any particular class of debtors or individuals, and is not unconstitutional as being in contravention of sec. 10, art. 1 of the constitution of the United States, or of sec. 1

On the question of validity and effect of statute regulating time of payment of wages, see notes in 21 L. R. A. 797; 28 L. R. A. 344; 15 L. R. A., N. S., 350; 27 L. R. A., N. S., 255; 35 L. R. A., N. S., 549; 51 L. R. A., N. S., 1097.

of the fourteenth amendment to the constitution of the United States, or of secs. 13 and 16, art. 1, of the constitution of this state.

[As to validity of statutes limiting hours of a day's labor, see note in Ann. Cas. 1912D, 393.]

2. The object of the legislation embodied in chapter 170 of the Session Laws of 1911 is to require employers of labor to pay their employees promptly and in lawful money when the employment ceases, upon the ground that the employee should not be compelled to wait beyond a reasonable time to obtain the compensation to which his contract of service entitles him.

3. Chapter 170 of the Sess. Laws of 1911 must be reasonably construed, and it was not the intention of the legislature in enacting it to penalize the employer for failing to pay an unjust debt, nor for the failure to pay when the discharged laborer, after demanding payment, prevents compliance with the demand by his own conduct, nor to deny or preclude the right of the employer to interpose any valid counterclaim or defense to the claim of such laborer.

4. *Held,* that the trial court inadvertently entered judgment in favor of one of the respondents for a greater sum than under the evidence he was entitled to receive, and judgment modified in accordance with the proof.

APPEAL from the District Court of the First Judicial District in and for Shoshone County. Hon. William W. Woods, Judge.

Action to enforce laborers' liens under the provisions of chapter 170, Sess. Laws 1911. Judgment for plaintiffs. *Modified.*

C. J. Orland, for Appellant.

Chapter 170, Session Laws of 1911, of the acts of the legislature of Idaho, is not within the police power of a state, and is unconstitutional and void. (*Frorer v. People,* 141 Ill. 171, 31 N. E. 395, 16 L. R. A. 492; *Jordon v. State,* 51 Tex. Cr. 531, 103 S. W. 633, 11 L. R. A., N. S., 603, 14 Ann. Cas. 616; *In re Jacobs,* 98 N. Y. 98, 99, 50 Am. Rep. 636; *Low v. Rees Printing Co.,* 41 Neb. 127, 43 Am. St. 670, 59 N. W. 362, 24 L. R. A. 702; *State v. Haun,* 61 Kan. 146, 59 Pac. 340, 47 L. R. A. 369; *In re Aubrey,* 36 Wash. 308, 104 Am. St. 952, 78

Pac. 900, 1 Ann. Cas. 927; *State v. Ashbrook,* 154 Mo. 375, 77 Am. St. 765, 55 S. W. 627, 48 L. R. A. 265.)

A statute to compel the payment of indebtedness is not within the police power. (*Gulf, C. & S. F. R. R. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. ed. 666.)

It interferes with the right of contract, deprives persons of their property without due process of law, and deprives them of the equal protection of the law, and prevents the master and servant or employer and employee, in private business enterprises, from entering into contracts of employment, and for the payment of wages or salaries in any medium other than money. (*Commonwealth v. Perry,* 155 Mass. 117, 31 Am. St. 533, 28 N. E. 1126, 14 L. R. A. 325; *Stimson Mill Co. v. Braun,* 136 Cal. 122, 89 Am. St. 116, 68 Pac. 481, 57 L. R. A. 726; *Lochner v. New York,* 198 U. S. 45, 25 Sup. Ct. 539, 49 L. ed. 937, 3 Ann. Cas. 1133; *State v. Goodwill,* 33 W. Va. 179, 10 S. E. 285, 6 L. R. A. 623; *Ex parte Kuback,* 85 Cal. 274, 20 Am. St. 226, 24 Pac. 737, 9 L. R. A. 482; *Johnson v. Goodyear Min. Co.,* 127 Cal. 4, 78 Am. St. 17, 59 Pac. 304, 47 L. R. A. 338; *Ritchie v. People,* 155 Ill. 98, 46 Am. St. 315, 40 N. E. 454, 29 L. R. A. 79; *Braceville Coal Co. v. People,* 147 Ill. 66, 37 Am. St. 206, 35 N. E. 62, 22 L. R. A. 340; *Ex parte Westerfield,* 55 Cal. 550, 36 Am. Rep. 47; *Ex parte Jentzsch,* 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664; *Gulf, C. & S. F. R. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. ed. 666; Tiedeman, Police Power, sec. 178.)

Penalties should only be enforced for the violation of a positive statute, or in the right of enforcing control over business affected with a public interest. (11 Cyc. 1101; *Hocking Valley Coal Co. v. Rosser,* 53 Ohio St. 12, 53 Am. St. 622, 41 N. E. 263, 29 L. R. A. 386; *Godcharles v. Wegeman,* 113 Pa. 431, 6 Atl. 354; *St. Louis I. M. & S. R. Co. v. Wynne,* 224 U. S. 354, 32 Sup. Ct. 493, 56 L. ed. 799, 42 L. R. A. N. S. 102; *Chicago M. & St. P. R. Co. v. Polt,* 232 U. S. 165, 34 Sup. Ct. 301, 58 L. ed. 554; *San Antonio & A. P. Ry. Co. v. Wilson* (Tex. App.), 19 S. W. 910; *Denver & R. G. Ry. Co. v. Outcalt,* 2 Colo. App. 395, 31 Pac. 177; *Wilder v.*

*Chicago & W. M. Ry. Co.,* 70 Mich. 382, 38 N. W. 289; *Jolliffe v. Brown,* 14 Wash. 155, 53 Am. St. 868, 44 Pac. 149; *Republic Iron & Steel Co. v. State,* 160 Ind. 379, 66 N. E. 1005, 62 L. R. A. 136.)

The act deprives the employer of property without due process of law, prevents the employer from showing any contract or agreement as to time of payment, upon discharge, or medium in which payment is to be made, and deprives the defendant in an action for wages of any defense against the penalty enacted under this act, and requires the court to enter judgment against an employer for such penalty, upon the proof of facts foreign to such penalty. (*Catril v. Union Pac. R. Co.,* 2 Ida. 576, 21 Pac. 416; *Jensen v. Union Pac. Ry. Co.,* 6 Utah, 253, 21 Pac. 994, 4 L. R. A. 724.)

W. H. Hanson, J. A. Wayne and Franklin Pfirman, for Respondents.

The object of this statute is to require employers of labor to pay their men when they are discharged or quit. It is merely in pursuance of the theory that the laborer is worthy of his hire; that he should not be compelled to sit idly by while waiting for his hard-earned money and suffer privations for the want of it, or eat up in advance of securing what he has earned before going elsewhere to seek employment. It does not interfere with the right of the employer to agree in advance as to what amount of commodity the employee shall receive for his labor, but whatever, it is, in the absence of any lawful agreement to the contrary, he is entitled to it when his labor is finished. (*Seaboard Air Line Ry. v. Seegers,* 207 U. S. 73, 28 Sup. Ct. 28, 52 L. ed. 108; *Erie R. Co. v. Williams,* 233 U. S. 685, 34 Sup. Ct. 761, 58 L. ed. 1155, 51 L. R. A., N. S., 1097; *McLean v. Arkansas,* 211 U. S. 539, 29 Sup. Ct. 206, 53 L. ed. 315; *Keokee Consol. Coke Co. v. Taylor,* 234 U. S. 224, 226, 34 Sup. Ct. 856, 58 L. ed. 1288; *Leep v. St. Louis etc. Ry. Co.,* 58 Ark. 407, 41 Am. St. 109, 25 S. W. 75, 23 L. R. A. 264; *St. Louis I. M. & S. R. Co. v. Paul,* 173 U. S. 404, 19 Sup. Ct. 419, 43 L. ed. 746; *Shortall v. Puget Sound Bridge & D. Co.,* 45 Wash. 290, 122 Am.

St. 899, 88 Pac. 212; *Wynne v. Seaboard Air Line Ry.*, 96 S. C. 1, 79 S. E. 521; *Opinion of the Justices (In re House Bill No. 1230)*, 163 Mass. 589, 40 N. E. 713, 28 L. R. A. 344; *Republic Iron & Steel Co. v. State,* 160 Ind. 379, 66 N. E. 1005, 62 L. R. A. 136; *Seelyville Coal & Mining Co. v. McGlosson,* 166 Ind. 561, 117 Am. St. 396, 77 N. E. 1044, 9 Ann. Cas. 234; *Commonwealth v. Hillside Coal Co.,* 109 Ky. 47, 58 S. W. 441; *Commonwealth v. Reinecke Coal Min. Co.,* 117 Ky. 885, 79 S. W. 287; *Commonwealth v. Dunn,* 170 Mass. 140, 49 N. E. 110; *Terre Haute & I. R. Co. v. Baker,* 4 Ind. App. 66, 30 N. E. 431.)

BUDGE, J.—Appellant is a corporation organized under the laws of Washington and owning and heretofore operating a group of mining claims in Beaver Mining District, Shoshone County, known as the Idora Mine. Respondents were employed by appellant as laborers in connection with said operations prior to the commencement of these proceedings.

Respondents were discharged from time to time by appellant, their wages being due at the time of the discharge, but they were not paid the respective amounts due them. Promises of settlement were made to respondents by one of the officials of the appellant corporation, and at his request, and relying upon his promises, respondents remained in Wallace for a period of more than forty days waiting for their money.

On April 29, 1914, the liens embodied in the case of Harry Olson et al., were filed and on May 1, 1914, action was commenced to foreclose them. On April 14, 1914, respondent Clark G. Norris filed his claim of lien and entered suit to foreclose the same on May 16, 1914. On May 21 and 24, 1914, respectively, Peter Probach and J. H. Smith filed their liens for record and immediately instituted an action to foreclose them.

On October 8, 1914, by order of the court, the above cases were consolidated for trial. On October 16, 1914, the cases were tried before the court without a jury. An attorney fee of $50 was agreed upon in the Probach and Smith case. Proof was offered in the other cases for the purpose of

establishing what would be a reasonable attorney fee; and the court found in the case of Harry Olson et al., $725, and in the case of Norris, $75, to be reasonable attorney fees. Appellant in the trial court admitted the respective amounts claimed by respondents to be correct, but denied the validity of the penalties and the reasonableness of the attorney fees except in the Probach-Smith case.

On December 1, 1914, judgment was entered in favor of respondents for the amount of wages due and unpaid, together with costs and attorney fees, including penalties in favor of each of the respondents for a period of thirty days in an amount equal to the wages which they were receiving without rendering services therefor. This is an appeal from the judgment.

In this case a motion to dismiss the appeal and a motion to strike from the records and files exhibits A, B, C, and D, and the trial judge's notes of evidence were argued and submitted. We have carefully considered both these motions and reached the conclusion that they will be denied.

Appellant specifies and relies upon nine assignments of error. A number of these assignments might have been consolidated, and instead of discussing each of them separately, we will discuss only such as we deem necessary in order to reach what in our opinion is a proper determination of this case.

The serious question in this case, raised by appellant's first assignment of error, is that chapter 170 of the act of the legislature of this state as contained in Session Laws of 1911, page 565, is unconstitutional, in that it violates the provisions of sec. 10, art. 1 of the constitution of the United States and of secs. 13 and 16, art. 1 of the constitution of Idaho, and also of sec. 1 of the 14th amendment to the constitution of the United States. And appellant contends that the trial court erred in rendering judgment against it and in favor of either or any of the respondents for any penalty or sum of money claimed under said various liens for an amount equaling the wages for a period of thirty days which they were receiving at the time of their discharge, or for any

length of time, as a penalty for nonpayment of wages at the time they were discharged.

The body of chapter 170 of the 1911 Session Laws reads as follows:

"Section 1. Whenever any employer of labor shall hereafter discharge or lay off his or its employees without first paying them the amount of any wages or salary then due them, in cash, lawful money of the United States, or its equivalent, or shall fail or refuse on demand to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week or month, each of his or its employees may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default until he is paid in full, without rendering any service therefor; *Provided, however,* he shall cease to draw such wages or salary thirty (30) days after such default.

"Sec. 2. Every employee shall have such lien and all other rights and remedies for the protection and enforcement of such salary or wages as he would have been entitled to had he rendered services therefor in manner as last employed."

Section 10 of article 1 of the United States constitution to which counsel for appellant refers is evidently the first subdivision thereof, which reads as follows:

"No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts, or grant any title of nobility."

Section 13 of article 1 of the constitution of Idaho reads in part as follows:

"No person shall be . . . . deprived of life, liberty or property without due process of law."

Section 16 of article 1 of the Idaho constitution provides:

"No bill of attainder, *ex post facto* law, or law impairing the obligation of contracts shall ever be passed."

Section 1 of the 14th amendment to the constitution of the United States reads as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

Statutes similar in many respects to chapter 170, *supra*, have been enacted in a great number of the states of this country, and many of them have been before the supreme courts of the respective states, and numerous decisions have been handed down, some of which have upheld the provisions of the laws and others have pronounced them unconstitutional.

Labor legislation is a product of, and has in a measure kept pace with, civilization. The enactment of such laws is evidently occasioned by the peculiar conditions that exist in the various states affecting labor. The object of such legislation is to require employers of labor to pay their men promptly and in lawful money when they are discharged or quit, and this object is grounded in the broad principle that labor is property for which due compensation is to be paid upon the performance thereof, and that the laborer is worthy of his hire and should not be required to wait beyond a reasonable time for money he has earned, or for which he has sold his labor. A laborer's economic condition is usually such that to deprive him of his earnings for any considerable period of time brings into his home poverty and privation.

Some of the numerous statutes to which our attention has been directed and which have been held unconstitutional are materially different in their provisions from the one upon which this action is based, by reason of the limitations placed upon the right of both the employer and the employee to contract and by reason of the legislature's having undertaken to make contracts for persons such as those persons

might not be willing to make themselves and to forbid the
making of contracts which they would otherwise make.
But in recent years the trend of authority seems to be that
the legislature has the power to regulate the time of pay-
ment of wages to within a reasonable time after the services
have been rendered according to the terms of the contract
and after demand, and thus avoid serious injury and injus-
tice to the working class as a result of undue delay in the
payment of wages. Such legislation has been sustained as
being within the police power of the state. (*Chicago, B. &
Q. R. Co. v. McGuire,* 219 U. S. 549, 31 Sup. Ct. 259, 55 L. ed.
328; *Johnson, Lytle & Co. v. Spartan Mills,* 68 S. C. 339, 47
S. E. 695, 1 Ann. Cas. 409.)

In the case of *International Text-book Co. v. Wessinger,*
160 Ind. 349, 98 Am. St. 334, 65 N. E. 521, 65 L. R. A. 599,
a statute which provided for regular pay-days and payment
of wages in lawful money of the United States by every per-
son, company, corporation or association employing any
person to labor and prohibited any assignment of future
wages, was attacked on the ground of infringement of the
liberty of contract, the attack being particularly directed
against the assignment of future wages. The supreme court,
in upholding that act and overruling the objection on the
ground stated, said in part: ''A large portion of the persons
affected by these statutes of labor are dependent upon their
daily or weekly wages for the maintenance of themselves
and their families. Delay of payment or loss of wages
results in deprivation of the necessaries of life, suffering,
inability to meet just obligations to others, and, in many
cases, may make the wage-earner a charge upon the public.
The situation of these persons renders them peculiarly liable
to imposition and injustice at the hands of employers,
unscrupulous tradesmen, and others who are willing to take
advantage of their condition. Where future wages may
be assigned, the temptation to anticipate their payment, and
to sacrifice them for an inadequate consideration, is often
very great. Such assignments would, in many cases, leave
the laborer or wage-earner without present or future means

of support. By removing the strongest incentive to faithful service,—the expectation of pecuniary reward in the near future,—their effect would be alike injurious to the laborer and his employer. It is clear that the object of the act of 1899, *supra,* was the protection of wage-earners from oppression, extortion, or fraud on the part of others, and from the consequences of their own weakness, folly, or improvidence.''

One of the latest cases involving the constitutionality of a statute on the ground of restriction of the rights of parties to make contracts is that of *McLean v. State,* 81 Ark. 304, 126 Am. St. 1037, 98 S. W. 729, 11 Ann. Cas. 72. The statute there attacked prohibited the screening of coal in mines before it was weighed to determine the wages the miner would be entitled to, and provided suitable penalties for a violation of the act. This statute was upheld against the attack that it was obnoxious to the provisions of the constitution of Arkansas and the 14th amendment of the constitution of the United States, securing to all persons equality before the law, the court stating, among other things, that it was a valid exercise of the police power to protect the miner from fraud and oppression.

The case was appealed to the supreme court of the United States (*McLean v. Arkansas,* 211 U. S. 539, 29 Sup. Ct. 206, 53 L. ed. 315) and there affirmed. The court, speaking through Justice Day, said: ''That the constitution of the United States, in the 14th amendment thereof, protects the right to make contracts for the sale of labor, and the right to carry on trade or business, against hostile state legislation, has been affirmed in decisions of this court, and we have no disposition to question those cases in which the right has been upheld and maintained against such legislation. (*Allgeyer v. Louisiana,* 165 U. S. 578, 17 Sup. Ct., 427, 41 L. ed. 832; *Adair v. United States,* 208 U. S. 161, 28 Sup. Ct. 277, 52 L. ed. 436, 13 Ann. Cas. 764.) But, in many cases in this court, the right of freedom of contract has been held not to be unlimited in its nature, and when the right to contract or carry on business conflicts with laws declaring the public pol-

icy of the state, enacted for the protection of the public health, safety, or welfare, the same may be valid, notwithstanding they have the effect to curtail or limit the freedom of contract.''

In the case of *State v. Missouri Pac. Ry. Co.*, 242 Mo. 339, 147 S. W. 118, the court sustained the constitutionality of a statute of that state requiring all corporations doing business in Missouri to pay their employees as often as semi-monthly, and fixing penalties for violation thereof. It was substantially held that such statute did not violate section 1 of the 14th amendment of the constitution of the United States, nor did it conflict with section 10, article 1, of the United States constitution as destroying the right of defendant to make legitimate contracts with its employees in respect to matters which are not a violation of any criminal law, and which do not relate in any manner to the safety, health or public welfare of such employees, as the law does tend to promote the welfare of defendant's employees and the general public, and is not needlessly injurious or oppressive to corporations. It was also held that the law did not violate the Missouri constitution as depriving the companies of their natural right and liberty to contract, or of the gains of their own industry, or of their property without due process of law, or of the charter right to employ labor upon any reasonable terms agreed upon; nor did it violate such constitution as taking the company's private property and appropriating the same to the private use of certain of its employees, nor as granting irrevocable privileges to certain persons, nor as special or class legislation.

In the case of *Erie R. Co. v. Williams*, 233 U. S. 685, 686, 34 Sup. Ct. 761, 58 L. ed. 1155, 51 L. R. A., N. S., 1097, wherein a statute which required an interstate carrier to pay its employees semi-monthly was attacked on the ground of unconstitutionality, one of the contentions made was that the statute violated section 1 of the 14th amendment of the constitution of the United States, in that it denied to employees of the Erie Railroad Company the equal protection of the law. The supreme court, speaking through Mr. Justice McKenna,

said that the defendant railroad company could not be heard to complain on this ground, in view of the fact that the employees were not complaining.

In the case of *Re House Bill 1230* (*Opinion of Justices*), 163 Mass. 589, 40 N. E. 713, 28 L. R. A. 344 (in which are cited numerous cases involving the validity and effect of statutes regulating the payment of wages), it was held that a statute requiring manufacturers to pay wages of their employees weekly, although applying to individuals as well as to corporations, is, under the Massachusetts constitution, within the power of the legislature to enact. In this case the court said: "It is well known that in some of the states of this country legislation similar to that proposed has been held unconstitutional by the courts, sometimes on the ground that it is partial in its character, but more frequently on the ground that it interferes with what is called the liberty of contract. . . . . In some of these decisions a distinction has been suggested or made between the rights of natural persons and the rights of corporations, and such legislation has been deemed valid with respect to corporations whose charters were subject to alteration, amendment, or repeal by the legislature, or which, being foreign corporations, were permitted to do business in the state under such conditions as the legislature might impose, while the legislation has been deemed void with respect to natural persons." But in another part of this opinion the court says: "We know of no reason derived from the constitution of the commonwealth or of the United States why there must be a distinction made in respect to such legislation between corporations and persons. . . . . "

And in *Commonwealth v. Dunn*, 170 Mass. 140, 49 N. E. 110, a statute regulating the time of payment of wages by persons, partnerships and corporations engaged in any manufacturing business, was assumed to be constitutional for the reasons stated in the *Opinion of Justices, supra.*

In *Hancock v. Yaden*, 121 Ind. 366, 16 Am. St. 396, 23 N. E. 253, 6 L. R. A. 576, the validity of a statute requiring the wages of employees engaged in mining or manufacturing to be paid at least once every two weeks by all persons, firms,

corporations, etc., engaged in such business, was fully sustained.

The case of *Seelyville Coal etc. Co. v. McGlosson,* 166 Ind. 561, 117 Am. St. 396, 77 N. E. 1044, 9 Ann. Cas. 234, is in point with the case at bar. It sustains the contention of respondent here and is supported by numerous authorities, both state and federal. The statute of Indiana upon which the action in that case was based required certain employers to pay their employees at least once every two weeks the amount due for labor on the demand of the employee, and provided that each employer who failed for ten days after demand of payment to pay the employee the amount of wages then due for labor, should be liable to the employee for the value of the labor, together with a penalty of one dollar for each succeeding day, not to exceed double the amount of wages due. The court in discussing that statute and distinguishing it from one involved in a former case in that state said: "The invalidity of the statute involved in *Republic Iron & Steel Co. v. State, supra,* [160 Ind. 379, 66 N. E. 1005, 62 L. R. A. 136], was, by this court, attributed to the fact that the act deprived both the employer and the employee in all lines of labor of the right to contract for employment, except upon the condition that the wages earned by the employee should be paid weekly. The right of the legislature reasonably, or to a limited extent, to regulate the payment of wages, as is done under the statute in the case at bar, was not in that appeal denied by the court.

"It will be observed that the act of 1887 does not profess to restrict or abridge the right of contract, except as against its express requirement that the amount due the employee for labor shall be paid in lawful money of the United States. This is the only express provision thereof which prohibits the right to contract. . . . . ''

In the case of *Shortall v. Puget Sound Bridge & Dredging Co.,* 45 Wash. 290, 122 Am. St. 899, 88 Pac. 212, an amendment to an act which forbade corporations, etc., from paying employees by order, draft, etc., or otherwise than in lawful money, unless such orders or drafts were negotiable

and redeemable in money, providing that wages earned by laborers should be payable whenever the laborer ceased work, whether of his own volition or because discharged by his employer, was attacked on the ground that it was in contravention of both the state and federal constitutions. The contention was made that the act was unsupported by any principle of public policy. But the court held the act to be constitutional, and said: "But we think the practice pursued by certain employers of labor, of paying the wages of their employees in orders drawn upon stores redeemable in commodities other than lawful money of the United States, and of postponing the day of payment until long after the wages were earned, was a real evil, operating to the detriment of the wage-earner, and consequently to the detriment of the state. As such practices were subject to correction by the legislature, . . . . its act in that regard was well within the rules of sound public policy." That court cited numerous cases in support of the doctrine there announced.

In cases where such statutes have been attacked and upheld the courts have, as a rule, taken the position that the statutes are subject to a reasonable construction, and that the intention is not to be gathered from a statute of this nature that the employer shall be penalized for the failure to pay what is not a just debt, nor for the failure to pay when the discharged laborer, after demanding payment, prevents compliance with the demand by his own conduct, nor to deny nor preclude the right of the employer to interpose any valid counterclaim or defense to the claim of such laborer. Nor, under such interpretation, can an action be maintained for a penalty alone after a settlement for loss or damage before suit. The statute being penal in its nature, should receive such construction as would not defeat the obvious intent of the legislature.

Viewed in this light, chapter 170, Sess. Laws 1911, cannot be assailed on the ground that it in any manner interferes with the right of the employer to agree in advance with the employee upon the terms and conditions of the contract of employment, or the date of payment, or the equivalent that

he will receive in lieu of lawful money of the United States; that it affords the employee the right to maintain an action for wages or salary until the same becomes due and owing under the terms of the contract, express or implied; or that it singles out any particular class of debtors and punishes it for failure to perform certain duties—duties which are equally obligatory upon all debtors—as it applies to all employers of labor, whether corporations, partnerships, associations or individuals.

In the case of *Ingard v. Barker,* 27 Ida. 124, 147 Pac. 293, this court held that "In passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, nothing but a clear violation of the constitution will justify the courts in overruling the legislative will, and where there is reasonable doubt as to the constitutionality of the act, it must be resolved in favor of the act." (See to same effect *Noble v. Bragaw,* 12 Ida. 265, 85 Pac. 903; *Ex parte Gale,* 14 Ida. 761, 95 Pac. 679; *Grice v. Clearwater Timber Co.,* 20 Ida. 70, 117 Pac. 112.)

And as we are of the opinion that it is the province of the legislature, within reasonable bounds, to determine whether certain legislation is necessary or expedient for the safety, health, morality, comfort and welfare of the people of this state, we feel justified in holding that chapter 170, Sess. Laws 1911, p. 565, is a legitimate exercise of the police power of the state; that it is not a violation of the liberty of contract in respect of labor; that it does not deprive the employer or the employee of the liberty or right to enter into any contract, nor take property from the employer without due process of law; and, therefore, that it is not unconstitutional as being in violation of sec. 10, art. 1, of the constitution of the United States, secs. 13 and 16, art. 1, of the constitution of this state, or of sec. 1 of the 14th amendment to the constitution of the United States.

In going into the record of this case it appears that the judgment in favor of Morris Pearson for the sum of $623.20 is excessive, and not supported by the evidence. The trial court, in entering the respective amounts due respondents,

inadvertently entered judgment in that sum, when, as a matter of fact, judgment should have been entered in favor of respondent Pearson for $247.70 together with costs, $2.28, and attorney fee, $50. And the trial court is hereby directed to modify said judgment in accordance with the proof submitted upon the trial of the cause.

All the other assignments of error have been considered by this court and found to be without merit. Therefore, the judgment of the trial court, except as above modified, is affirmed, with costs in favor of respondents.

Sullivan, C. J., and Morgan, J., concur.