299 P.2d 496

Thomas LINDSEY, Plaintiff-Respondent,

v.

J. E. McCATRON & Roy F. Nine, d/b/a
Price Valley Lumber Company,
Defendant-Appellant.

No. 8352.

Supreme Court of Idaho.

July 10, 1956.

212

W. C. MacGregor, Jr., Grangeville, Eli A. Weston, Boise, for appellant.

William J. Dee, Grangeville, for respondent.

SMITH, Justice.

Plaintiff-respondent brought this action for recovery of $77.20 wages due him from defendants-appellants up to February 8, 1954; also for recovery of 30 days additional wages, i. e., $463.20, as a penalty, and for attorneys fees and costs. Trial was had before a jury. During trial, upon motion of respondent's attorney, the case was dismissed as against a defendant, Combo Pine, Inc.

The jury returned a verdict in respondent's favor for $92.64 wages and $293.36 by way of penalty, and the trial court awarded respondent attorneys fees and costs. The court entered judgment therefor in favor of respondent and against appellant; also denied appellant's motion for a new trial. Appellant thereupon appealed from the judgment and from the order denying a new trial.

The facts necessary to be considered here do not appear to be in dispute. Essentially the case presents questions of law for determination.

The essential questions involved, and saved by appellant's specifications of error are whether under the circumstances shown in this case, respondent became entitled to the recovery of any sum of money in excess of the actual and agreed amount of his wages of $77.20; and particularly whether he became entitled to recovery of attorneys fees as provided by I.C. § 45-605, and to recovery of any sum as a penalty as provided by I.C. § 45-606.

September 1, 1953, respondent became employed by appellant in its logging operations and so continued until February 8, 1954, excepting during at least two occasions when he quit or was laid off. His work was in the timber, situate out from Whitebird and about 80 miles from appellant's office. During those several months of employment respondent received and accepted his pay in the form of respondent's checks.

Respondent's employment with appellant terminated February 8, 1954. The termination came about as the result of appellant having been transferred from work as a sawyer to that of a knot bumper. Appellant's president informed respondent that the other sawyers refused to saw if he was put back sawing again because "he went through his strips [of timber] and picked out all the large trees along his line and sawed all the big timber of his own and then laid off awhile—which the time sheets would show that he did this right along," which caused additional work for other sawyers in sawing out the timber strips, in-

cluding respondent's strip. "So that's why we put him to bumping knots."

The issue, whether respondent then quit the employment of his own accord, or was discharged or laid off by his employer, was submitted to the jury. The jury appears to have resolved the conflict in the evidence in that regard in respondent's favor, i. e., that he was discharged or laid off by the employer.

Respondent at the time of his employment termination had wages accrued of $77.20 for a work week of five days. He did not demand payment of his wages at that time. Appellant in the ordinary course of its business made its check to respondent for such amount of wages, less legal deductions, and mailed it to him at Whitebird, where he lived. Respondent received the check February 21, 1954.

Respondent did not accept the check in payment of his wages, but took it to his attorney. The attorney wrote a letter February 24, 1954, to appellant, returning the check, stating that respondent objected to the check because it was not cash; also that the amount of the check was for the actual wages, whereas respondent was entitled to collect penalty provided by I.C. § 45–606; also demanding payment of the wages, and the penalty for every day of appellant's alleged default; also, the letter referred to I.C. § 45–605, providing for allowance of reasonable attorneys fees in case of an action brought for recovery of wages justly due and not paid upon demand in writing made at least five days before bringing the action.

Appellant made proof of two additional subsequent tenders, the second, for the sum of $92.64, and the third for the sum of $169.84, less legal deductions, both of which tenders respondent rejected; also, appellant tendered proof, which the trial court rejected of its fourth offer to respondent of $334.48, and his refusal to accept it. All of the foregoing tenders and offers occurred more than five days prior to June 7, 1954, the date when respondent commenced this action against appellant.

The salient portions of I.C. § 45–606, which require consideration here, are:

"Whenever any employer of labor shall hereafter discharge or lay off his or its employees without first paying them the amount of any wages or salary then due them, *in cash*, lawful money of the United States, *or its equivalent*, or shall fail or refuse *on demand to pay* them in *like money, or its equivalent*, the amount of any *wages* or salary at the time the same becomes *due and owing* to them *under their contract of employment*, * * * each of his or its employees may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default until he is

paid in full, without rendering any service therefor: provided, however, he shall cease to draw such wages or salary thirty days after such default." (Emphasis supplied.)

The first question which requires disposition is, whether appellant employer's checks constituted the "equivalent" of cash under the facts shown herein.

The record shows without dispute that, during his several months of employment, respondent always was paid and always he accepted appellant's checks in payment of his wages. The record does not negative payment of his wages by that medium of exchange when respondent was laid off or quit upon at least two occasions. Respondent during said times neither objected to nor questioned the payment of his wages by the check method, i. e., in lieu of cash, nor questioned the negotiability of his employer's checks for value, either at the bank upon which drawn or in the ordinary course of trade in his locale. We must therefore hold that respondent acceded to and accepted such method of payment as a condition or incident of his employment. The rule applicable under such circumstances is stated in Olson v. Idora Hill Min. Co., 28 Idaho 504, 517, 155 P. 291, 295, in language as follows:

"The statute [I.C., sec. 45-606], being penal in its nature, should receive such construction as would not defeat the obvious intent of the Legislature.

"Viewed in this light, chapter 170, Sess.Laws 1911, [I.C., sec. 45-606] cannot be assailed on the ground that it in any manner interferes with the right of the employer to agree in advance with the employee upon the terms and conditions of the contract of employment, or the date of payment, *or the equivalent that he will receive in lieu of lawful money of the United States*".

The next question is whether respondent's refusal to accept payment of his wages by appellant's check and his subsequent demand through his attorney rendered appellant liable for payment of statutory penalty and attorneys fees as provided respectively by I.C. §§ 45-606 and 45-605.

Respondent has brought himself within the first alternative of I.C. § 45-606, since appellant discharged or laid off respondent without first paying him the amount of his wages then due.

Respondent admits that February 21, 1954, appellant tendered to him in the form of appellant's check the full amount of his earned wages of $77.20, less legal deductions. Respondent contends that he was not bound to accept the tender since it did not include any amount as the statutory penalty; also contends since appellant did not tender, in addition to the amount of earned wages, the total amount of accrued

penalty as of the date any tender was made during the 30 days after the date of respondent's employment termination, that, therefore, respondent is entitled to recover not only the amount of $77.20 earned wages, but to recover the additional amount of $463.20 as 30 days' penalty at the daily wage rate of $15.44.

The amount provided by I.C. § 45-606 to be paid in case of "such default" of an employer has been held to be and is classified as a penalty. Olson v. Idora Hill Min. Co., supra; Marrs v. Oregon Short Line R. R. Co., 33 Idaho 785, 198 P. 468; Robinson v. St. Maries Lumber Co., 34 Idaho 707, 204 P. 671; Harp v. Stonebraker, 57 Idaho 434, 435, 65 P.2d 766.

In St. Louis, I. M. & S. R. Co. v. Bryant, 92 Ark. 425, 122 S.W. 996, 997, the court construed an Arkansas statute which provided in effect, that if an employer shall discharge an employee or refuse further to employ him, the wages of the employee shall thereupon become due and payable, and such employee may request his money due him or a valid check sent to him as he may direct; and if the money or check be not paid as so requested within seven days, "'then as a penalty for such nonpayment the wages of such servant or employee shall continue from the date of the discharge or refusal to further employ at the same rate until paid.'" The Arkansas court held:

"The primary intent of this statute is not to secure the payment of a penalty, but the payment of the wages; and, by the provision of the statute, it is stipulated that the penalty shall continue until the wages are paid. When the wages are paid, therefore, the penalty ceases. But the only way that the railroad company can make the payment of the wages is to make the offer or tender thereof. * * * If the tender is accepted, it then becomes a payment of the wages, and would cause the penalty to stop. When the railroad has, therefore, done all that it can to make the payment, it becomes in law equivalent to a payment, and so stops the continuance of the penalty. The statute provides that 'as a penalty for such nonpayment the wages of such servant or employee shall continue * * * at the same rate until paid.' The payment here referred to clearly only refers to the payment of the wages, and not to any penalty; and so, if that which is done which is equivalent to a payment, to wit, a tender of the amount of wages, then all is done that is required by the statute to stop the further running of the penalty. * * * The plaintiffs, upon said tender being made or upon acceptance of that amount for the wages only, had still the right to recover the amount of the penalty which had accrued to that

date and now have that right; but not to recover any further amount for penalty."

This court in Robinson v. St. Maries Lumber Co., supra, construed the penal provisions of I.C. § 45–606, and in so doing adopted the aforesaid construction by the Arkansas court of the penalty provisions of the Arkansas statute, in the following language:

"The court found that on July 3, 1917, appellants tendered to * * * respondents, the full amount of wages due them on their time checks, but did not tender them the amount of the penalties claimed. This tender was refused. Upon the payment or tender of the wages, the running of the penalty provided by C.S. § 7381 [now I.C., sec. 45–606], stopped. The employee, however, still had the right to bring suit for the penalty that had accrued up to that time. St. Louis [I. M. & S.] Ry. Co. v. Bryant, 92 Ark. 425, 122 S.W. 996. A tender has the same effect as payment." [34 Idaho 707, 204 P. 672.]

■ We therefore hold herein, in accordance with our previous ruling, that appellant's February 21, 1954 tender to respondent of the amount of his earned wages, stopped the running of the statutory penalty provided by I.C. § 45–606; also that it was not a necessary prerequisite of the tender that it include the amount of the statutory penalty accrued, in addition to the amount of the earned wages. Respondent became entitled to penalty computed from February 8th, the date of termination of his employment, to and including February 21, 1954, the date of the tender, i. e., 13 days at $15.44, amounting to $200.-72, and to the amount of his earned wages of $77.20 tendered, totaling $277.92, subject to legal deductions required to be paid by the employer.

■ The liability for payment of attorneys fees provided by I.C. § 45–605 arises only when an employee establishes that the amount of earned wages for which he has made written demand at least five days before bringing an action, is found justly due him. Respondent had no cause to bring an action to recover the amount of his earned wages of $77.20 due, since appellant February 21, 1954, tendered payment thereof to him in accordance with an accepted condition of said employment; and the tender had the same effect as payment, i. e., it extinguished respondent's right to the allowance of an attorneys fee under the statute.

■ The record fails to show that appellant paid into court the amount of its tender to respondent of the amount of his earned wages; therefore respondent is entitled to his costs in the trial court. I.C. § 12–110.

The judgment of the trial court is modified and the cause is remanded with directions to the trial court to reduce the amount of the judgment in respondent's favor to the sum of $277.92, together with respondent's costs in the trial court in the sum of $21.00, less the legal deductions hereinbefore referred to for the payment of which appellant is responsible. Costs on appeal to appellant.

TAYLOR, C. J., ANDERSON, J., and BAKER, D. J., concur.

KEETON, Justice (dissenting).

In my opinion the judgment appealed from should be affirmed. The employee was discharge and under the provisions of section 45–606, I.C., was entitled to immediate payment in money. The check thereafter offered in payment of the wages earned was refused on the ground it was not money or its equivalent. No creditor is required to accept a check in payment of an indebtedness. There was no agreement between the employer and employee that a check would be accepted. The fact that a check was, on prior occasions, given and received without objection is of no importance. A custom, if one existed, cannot modify, repeal or change the wording of a positive statute. Had plaintiff been tendered or paid the money earned the penalty provided by statute would then stop. The employee never having been paid or tendered his wages in money or its equivalent, the penalty provided by law continued for the full thirty-day period.

There was no testimony whatsoever that the parties contemplated the payment of wages earned by a check. The employer did not pay the money due into court or offer to confess judgment. Plaintiff established his right to recover the amount claimed and demanded, and under the provisions of section 45–606, I.C., should be allowed attorney fees.

I do not construe the statute as interpreted in the majority opinion, nor can I follow the reasoning by which the conclusion is reached. I would affirm the judgment.