442 P.2d 747

Bessie B. THOMAS, Executrix of the Estate of George Winton Thomas, Deceased, Plaintiff-Respondent,

v.

BALLOU–LATIMER DRUG CO., Defendant-Appellant.

No. 10084.

Supreme Court of Idaho.

July 8, 1968.

Elam, Burke, Jeppesen & Evans, Boise, for defendant-appellant.

Clemons, Skiles & Green, Boise, for plaintiff-respondent.

TAYLOR, Justice.

February 16, 1962, George Thomàs and the Ballou-Latimer Trust [1] entered into an employment agreement which reads in part:

"That Trustees hereby hire and employ party of the second part as General Manager of said drug store belonging to Trustees and General Manager does hereby accept such employment under the compensation, terms and conditions and for the times hereinafter specified, commencing as of the date hereof.

"The Trustees agree to pay, and the General Manager agrees to accept for the services to be rendered hereunder, a salary of Seven Hundred Twenty-Five (725.00) Dollars per month, payable semi-monthly on the first and 15th day of each month, the first salary payment to be due March 1, 1962. In addition thereto General Manager shall receive a bonus of twenty-five per cent (25%) of the net profit of said Ballou-Latimer Company, before income taxes and before any distribution under provisions of the above mentioned Trust Agreement. Such bonus shall be due as of December 31st of each year or portion of a year this agreement shall be in operation. Said net profit shall be calculated within a reasonable time after the close of the calendar year, and as soon as possible to ascertain the receipts and expenditures and to complete necessary bookkeeping and auditing.

\* \* \* \* \* \*

"General Manager is charged with and hereby accepts the full responsibility of the management and conduct of the business in general of the Trustees' said drug business in Boise, Idaho, subject only to accountability to, and supervision and direction of the Trustees. General Manager shall not make changes in general policy or discharge key employees without first consulting Trustees.

"General Manager agrees to so conduct himself, personally and in business, as not to affect adversely the business or the good standing or reputation of himself or the said Ballou-Latimer Co.

"General Manager agrees that he will not engage in any business or enterprise other than covered by this contract, except with the consent of the Trustees, but this shall not apply to personal investments made by him.

"It shall be the duty of the General Manager to keep full and complete books of account of the business in accordance with recognized accounting procedure and

---

1. On December 1, 1963, the Ballou-Latimer Trust transferred all its assets to defendant (appellant) Ballou-Latimer Drug Co. The defendant drug company assumed the obligations of the employment contract.

as prescribed by the Trustees or the company auditor; said books to at all times be available for inspection by the Trustees or said auditor or upon order of any of them. The auditor for the business shall be one to be selected by the Trustees and General Manager.

"Said General Manager shall make such statements and reports as a Trustee or Trustees shall require; and shall cause an inventory of such business to be taken as of December 31st and June 30th of each year, commencing with June 30, 1962.

\* \* \* \* \* \*

"This Agreement shall take effect as of February 16, 1962 and shall continue in force until terminated as hereinafter provided.

"It shall terminate upon the death of the said General Manager, or upon the sale or liquidation of the business without provision for a successor to assume the obligations of this Agreement. It is agreed that Trustees shall provide, in case of death of second party, the sum of $5000.00 to the wife of the General Manager, provided she survives him, or in event of her demise, to his children, share and share alike. Said sum to be paid in a lump sum, within 45 calender days of date of death.

"It may be terminated by either party hereto on December 31, 1962. In order for such termination to become effective, a written Notice of such termination shall be delivered to the other party by the terminating party at least thirty days prior to said termination date. In event of such a termination by either party, General Manager agrees that upon request of the Trustees, he will remain in his employment at least sixty (60) days beyond any such termination date and shall in that event share in the profits accordingly during such period. This Agreement shall terminate upon exercise of option of General Manager to purchase in as hereinafter set forth.

\* \* \* \* \* \*

"IT IS UNDERSTOOD AND AGREED, That in event of no termination, that this Agreement shall be reviewed as of each December 31st after date, for the purpose of adjusting and correcting inequities that may develop herein.

"IT IS FURTHER UNDERSTOOD AND AGREED, That at the date of entering into this Agreement, the said drug business is heavily indebted and that the main consideration of entering into this Agreement and the bonus provision hereof, is to provide inducement and encouragement for the General Manager's developing the said drug business to a point where the business will be a strong and going concern, free of debt except for its current monthly bills. It is also agreed, that in the process of liquidating such indebtedness that sufficient funds must be retained to properly maintain and operate said business."

Thomas was employed by Ballou-Latimer under the terms of the agreement until February 12, 1965, when the agreement was terminated by the defendant.

April 21, 1965, Thomas instituted this action to recover under the terms of the contract his salary for the remainder of 1965, bonus money for the year 1963, and vacation pay. The case was heard by a jury, and a special verdict was rendered answering three questions submitted to it by the court. Based on the verdict, judgment was entered in favor of Thomas, awarding him $7,612.50 salary for the remainder of 1965, $1,500.00 bonus for the year 1963, and $21.15 in costs. Vacation pay was not awarded. From the judgment, Ballou-Latimer has appealed. No appeal was taken by plaintiff Thomas.

The evidence at the trial showed that, although Thomas signed writings purporting to be resignations, in fact he had been given the choice by the directors of defendant of quitting or being discharged. Defendant attempted to prove that Thomas had been discharged for cause, asserting:

**340**

A. He had failed to prepare certain statements as required by the contract of employment.

B. He had accepted employment with a tire distributorship and had done work for the tire company on Ballou-Latimer time, using Ballou-Latimer personnel and equipment without permission of the directors in contravention of the contract of employment. Thomas presented evidence indicating that the directors and their attorney had failed to provide him with certain information necessary for the completion of said statements, though he had requested it from them numerous times. He also contradicted Ballou-Latimer's evidence with regard to the outside employment.

On the issue of the bonus, there is no dispute that Ballou-Latimer failed to show a profit, according to the terms of the employment contract, during the time Thomas held his position. Thomas, however, offered evidence that subsequent to the written contract, he and the directors agreed to an oral modification thereof. By the terms of the oral agreement changes in the method of determining profit and loss were made. Under the oral modification, Thomas contended Ballou-Latimer had a profit before taxes of $6,000.00 in 1963; and that by the terms of the contract, therefore, he was entitled to a bonus of $1,500.00.

The Ballou-Latimer directors admitted that such a modification had been discussed, but testified that it had been rejected by them.

In answer to the questions put to it the jury found:

A. That Thomas had been discharged;

B. That the discharge was without cause;

C. That Thomas and Ballou-Latimer had agreed orally to modify the terms of the written contract as to the method of computing the bonus for 1963.

The trial court then decided that the contract was a contract of employment from year to year, renewable each December 31st.

Since Ballou-Latimer failed to produce any evidence that Thomas could have or did mitigate damages by accepting other employment after discharge, the court awarded plaintiff his full salary for the remainder of 1965 ($7,612.50).

On the bonus question, the court accepted Thomas' testimony as to the amount due, Ballou-Latimer having presented no contrary evidence, and awarded $1,500.00.

 Defendant argues on appeal firstly that the evidence was insufficient to show a subsequent oral modification of the written contract in respect to bonus computation. Such subsequent oral modification must be proven by "clear and convincing" evidence. Ore-Ida Potato Products, Inc. v. Larsen, 83 Idaho 290, 362 P.2d 384 (1961); Miller v. Belknap, 75 Idaho 46, 266 P.2d 662 (1954); Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651, 94 A.L.R. 1264, Anno. 1278 (1934); see Morrison v. Pierce, 47 Idaho 430, 276 P. 306 (1929). Defendant claims that the oral modification was not established by "clear and convincing" evidence. In this jurisdiction, whether the alleged oral modification was proven by "clear and convincing" evidence is in the first instance for the trier of the facts to decide. The determination thereof, by the trier of the facts, will not be reversed where supported by substantial, competent, though conflicting, evidence. See Shrives v. Talbot, 91 Idaho 338, 421 P.2d 133 (1966); Gem-Valley Ranches, Inc. v. Small, 90 Idaho 354, 411 P.2d 943 (1966). A review of the transcript indicates that there was substantial, competent evidence to support either plaintiff's or defendant's position. Thus, it would be improper to overturn the findings of the jury.

Defendant contends that the court erred in concluding that the contract contemplated employment from calendar year to calendar year. It is agreed by all parties that the terms of the agreement were not specific as to duration of employment. The contract gave both parties the option of termination on December 31, 1962. Neither party acted upon that option.

There is a conflict among the authorities in cases similar to the one before us, when the duration of the contract of employment is not specified. According to the old English Doctrine, since modified, such a general hiring presumes a hiring for one year. Under the American Doctrine, a general hiring not limited to a specified period creates a presumption of a hiring at will under which either party may terminate the employment without cause at any time, assuming any notice requirements are met. As corollaries to the above, jurisdictions following the old English rule have held that a hiring at a named price per week, month, or year is presumed to be a definite hiring for the period named; while jurisdictions following the American rule hold that such a term, standing by itself, fixes the rate of compensation and not the period of employment. In all jurisdictions, however, the presumptions are rebuttable. The controlling factor is the intention of the parties as evidenced not only by the terms of the contract, but by all the surrounding circumstances. See, e. g. Rex v. Hampreston, 5 T.R. 205, 101 Eng.Rep. 116 (1793); Huttman v. Boulnois, 2 Carr & P. 510, 172 Eng.Rep. 231 (1826) (old English rule); Jones v. Manhattan Horse Manure Co., 91 N.J.L. 406, 103 A. 984 (1918); Lasser v. Grunbaum Bros Furniture Co., 46 Wash.2d 408, 281 P.2d 832 (1955) (American rule); see generally Anno. 161 A.L.R. 706 (1946); Anno. 100 A.L.R. 834 (1936); Anno. 11 A.L.R. 469 (1921); Restatement (Second) of Agency, § 442 (1958); W. Seavey, Law of Agency, § 170 (1964); 35 Am.Jur., Master and Servant, §§ 19–23.

The law outlined herein under the term "American Doctrine" is better suited to the ordinary business practice in our jurisdiction than the old English rules, and consequently is the law followed in Idaho. In the application of the law, whether a contract of employment which does not contain a provision defining duration of employment is of indefinite duration (and thus terminable at will) or of fixed duration for a definite term (and thus not terminable at will) is ultimately a question of fact. See Edwards v. Morrison-Knudsen Company, 61 Wash.2d 593, 379 P.2d 735 (1963); Lasser v. Grunbaum Bros Furniture Co., supra. The trier of the facts as to this issue was the district judge. From his memorandum decision, it is clear that he applied the correct rule of law when he decided that the contract contemplated employment from calendar year to calendar year, after December 31, 1962. The facts relied on by the trial court in reaching its conclusion may be summarized as follows:

A. The provision in the contract for an annual bonus as of December 31st of each year;

B. The provision in the contract for inventories as of June 30th and December 31st of each year;

C. The provision in the contract for an annual vacation of fourteen days per calendar year;

D. The provision in the contract to review the agreement as of December 31st each year;

E. The provision in the contract giving plaintiff the option to purchase an interest in the business subsequent to December 31, 1962;

F. The testimony of Thomas that defendant's attorney told him, at the time the contract was negotiated, that the agreement could be terminated only as of December 31st of any given year (except on the occurrence of certain specified events, none of which are relevant here);

G. The fact that the position was of some importance and not the type that would last for only a short period;

H. The fact that Thomas moved from Washington to Idaho to accept the position.

Taken individually, the facts relied on by the trial court do not of themselves show that the contract contemplated employment from calendar year to calendar year. But, taken in their totality (that is, considering all the circumstances) the facts of this case justify the finding of the trial court. As stated before, the question of whether an

employment at will or an employment for a definite term was contemplated basically is a factual issue. We do not hold that as a matter of law, the facts in this case show that employment from calendar year to calendar year was contemplated; rather we hold that the trier of the facts did not err in reaching the factual determination under review. Findings of the trial court, supported by substantial, competent, though conflicting, evidence, will not be reversed on appeal. Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); Formont v. Kircher, 91 Idaho 290, 420 P.2d 661 (1965); Heckman v. Espey, 12 Idaho 755, 88 P. 80 (1906).

■ Finally, defendant contends that the court erred in concluding that the six months statute of limitations in I.C. § 45–608 was not applicable to the claim for the 1963 bonus. I.C. § 45–608 reads in part:

"Any person shall have the right to collect salary, wages, overtime compensation, penalties and liquidated damages provided by any law or pursuant to a contract of employment, but any action thereon shall be commenced in a court of competent jurisdiction within two (2) years after the cause of action shall have accrued, provided, however, that in the event salary or wages have been paid to any employee and such employee claims additional salary, wages, overtime compensation, penalties or liquidated damages, because of work done or services performed during his employment for the pay period covered by said payment, any action therefor shall be commenced within six (6) months from the accrual of the cause of action. * * * In the event an action is not commenced as herein provided, any remedy on the cause of action shall be forever barred."

The bonus provided for was not a gratuity, but was part of the compensation bargained for in the agreement of employment.

In the case of Anderson v. Lee, 86 Idaho 300, 386 P.2d 54 (1963), we held that payments made to an employee on account, not purporting to be payments of the full amount due for particular pay periods, do not bring a claim for additional wages or compensation under the six months limitation provision of I.C. § 45–608. Under such circumstances the two year limitation period is applicable. After providing for the monthly salary, payable semimonthly, the contract of employment provides, "In addition thereto General Manager shall receive a bonus of twenty-five per cent (25%) of the net profit of said Ballou-Latimer Company * * *. Such bonus shall be due as of December 31st of each year * * *."

Herein we have held, as did the trial court, that the "Seven Hundred Twenty-Five ($725.00) per month" fixed the rate of compensation, but not the term of employment and that the employment was from calendar year to calendar year. It follows that plaintiff's full compensation for each year of the employment was $8,-700.00, plus 25% of the profits. Therefore, in any year when a profit was earned the semimonthly payments were payments on account and did not purport to be full payment for the yearly pay period. The court having found that a bonus was due for the year 1963, the semimonthly payments made during that year were partial payments on account for services rendered during that year. Thus, pursuant to the findings of fact made by the jury, and the construction of the contract given by the trial court, with which we agree, the two-year period of limitation is applicable in this case and plaintiff's claim for the 1963 bonus was not barred when the action was commenced.

Judgment affirmed.

Costs to respondent.

SMITH, C. J., and McQUADE, McFADDEN and SPEAR, JJ., concur.