149 P.3d 822

**Bruce P. PAOLINI, Plaintiff– Counterdefendant– Appellant,**

v.

**ALBERTSON'S INC., Defendant– Counterclaimant–Appellee– Respondent,**

and

**Plan Administrator of Albertson's Amended and Restated Stock–Based Incentive Plan, Defendant–Appellee–Respondent.**

No. 32495.

Supreme Court of Idaho, Moscow, August 2006 Term.

Nov. 22, 2006.

---

Bruce P. Paolini, Virginia Beach, Virginia, appellant pro se.

Stoel Rives, LLP, Boise, for respondents. James Dale argued.

EISMANN, Justice.

We have accepted questions of law certified by the Ninth Circuit Court of Appeals asking us whether stock options constitute wages under Chapter 6 of Title 45, Idaho Code, and whether terminating an employee for trying to exercise his right to receive wages violates Idaho's public policy exception to at-will employment. We answer the first question in the negative, which renders the second question moot.

## I. FACTS AND PROCEDURAL HISTORY

Bruce Paolini was an employee of Albertson's, Inc. (Albertson's) for seventeen years. During that time he received several thousand stock options issued pursuant to the Albertson's Amended and Restated 1995 Stock–Based Incentive Plan (Plan). According to the Plan, a change in control of the company accelerated vesting of the stock options. In the summer of 2001, Paolini believed that a change in control had occurred, and he attempted to exercise his stock options based on accelerated vesting. The Administrator of Albertson's, Inc.'s Stock–Based Incentive Plan (Plan Administrator) denied his request. For reasons that are disputed, Paolini later left his employment with Albertson's. He subsequently filed an action in the Federal District Court for the District of Idaho seeking to recover damages against Albertson's and the Plan Administrator. One of the claims he asserted was that Albertson's discharged him for acting to exercise his stock options. He argued that this was a retaliatory discharge in violation of Idaho's wage laws, public policy, and the covenant of good faith and fair dealing.

Both parties moved for summary judgment. The federal district court granted summary judgment to Albertson's and the Plan Administrator and denied Paolini's motions for summary judgment. He then appealed to the Ninth Circuit, which certified

questions of law in writing to us in order to resolve issues of law raised by Paolini on appeal. We accepted certification of those questions.

## II. CERTIFIED QUESTIONS OF LAW

1. Can stock options be wages under Idaho Code §§ 45–601(7) and 45–613? If so, is it a factual issue as to whether the stock options were issued as wages, to be resolved by a factfinder?

2. If an employer fires an employee for trying to exercise his right to the receipt of wages, has the employer violated the public policy exception to at-will employment?

## III. ANALYSIS

### A. Can Stock Options Be Wages under Idaho Code §§ 45–601(7) and 45–613?

■ Claims for wages are governed by Chapter 6 of Title 45, Idaho Code. Section 45–601(7) defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece or commission basis." The statute does not define wages as including all forms of compensation. *Latham v. Haney Seed Co.*, 119 Idaho 412, 807 P.2d 630 (1991) (approving *Whitlock v. Haney Seed Co.*, 114 Idaho 628, 759 P.2d 919 (Ct.App.1988), which held that the term *wages* as it is defined in I.C. § 45–601(7) does not include a life insurance policy issued as part of the employment contract because it was not compensation that was earned in increments as services were performed). The issue we address now is whether compensation in the form of stock options constitutes wages under Chapter 6 of Title 45.

■ "The interpretation of a statute is a question of law over which we exercise free review." *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 813, 135 P.3d 756, 759 (2006). "This Court must construe a statute to give effect to the intent of the legislature." *Carrier v. Lake Pend Oreille School Dist. # 84*, 142 Idaho 804, 807, 134 P.3d 655, 658 (2006). "It must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole." *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 813, 135 P.3d 756,

759 (2006) (citations omitted). "Statutes that are *in pari materia* must be construed together to effect legislative intent. Statutes are *in pari materia* if they relate to the same subject." *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 139 Idaho 65, 69, 72 P.3d 905, 909 (2003) (citations omitted).

Idaho Code § 45–608(1) gives clarity to the legislature's intent regarding the meaning of the word *wages* in Chapter 6 of Title 45. It states:

Employers shall pay all wages due to their employees at least once during each calendar month, on regular paydays designated in advance by the employer, in lawful money of the United States or with checks on banks where suitable arrangements are made for the cashing of such checks without charge to the employee. Nothing contained herein shall prohibit an employer from depositing wages due or to become due or an advance of wages to be earned in an account in a bank, savings and loan association or credit union of the employee's choice, provided that the employee has voluntarily authorized such deposit. If the employee revokes such authorization for deposit, it shall be deemed terminated and the provisions herein relating to the payment of wages shall apply.

This statute requires employers to "pay all wages due to their employees at least once during each calendar month, on regular paydays designated in advance by the employer." By its terms, it is not limited to wages earned during a calendar month or to wages that are normally paid every calendar month. It applies to wages *due* during the month. Wages earned over a longer period of time, such as an annual bonus based upon net profits, will come due during a specific calendar month and are covered by the statute.

■ This statute also requires that employers "*shall* pay *all* wages due to their employees ... in lawful money of the United States or with checks on banks where suitable arrangements are made for the cashing of such checks without charge to the employee" or by deposit into the employee's account with his or her consent. (Emphasis added.) "The word *shall*, when used in a statute, is mandatory." *Goff v. H.J.H. Co.*, 95 Idaho

837, 839, 521 P.2d 661, 663 (1974). Thus, the employer does not have discretion to pay wages in a manner other than as directed by the statute. The manner of payment directed by the statute applies to "*all* wages due." If all wages due must be paid in cash, with a check, or by deposit into the employee's account, then the word *wages* can only refer to monetary compensation. Nonmonetary compensation such as stock options cannot be wages because that form of compensation is not payable in cash, with a check, or by deposit into the employee's account. When Section 45–601(7) is construed with Section 45–608(1), stock options cannot constitute wages under Section 45–601(7). The term *wages* in Chapter 6 of Title 45 only refers to monetary compensation.

The dissent argues that Idaho Code § 45–608(1) only deals with wages that come due on a periodic basis. Of course, that is not what the statute says. For it to say that, the dissent would have to add the words shown in italics so that it would say, "Employers shall pay all wages *that come* due *on a periodic basis* to their employees at least once during each calendar month." There is nothing in the wording of the statute as enacted by the legislature, however, that limits its application to wages that come due on a periodic basis. As drafted, the statute applies to "all wages due," not just to those that come due on a periodic basis.

The dissent also argues that changes made in 1989 to Idaho Code § 45–606 demonstrate a legislative intent that wages due on termination from employment do not have to be paid in cash or its equivalent. In 1989 the legislature recodified and amended the statutes in Chapter 6 of Title 45. Prior to 1989, Section 45–606 required that upon termination an employer must pay wages then due "in cash, lawful money of the United States, or its equivalent." After 1989, that wording was not in Section 45–606. According to the dissent, this indicates that the legislature intended to eliminate any requirement that wages due on termination be paid in cash or by check or deposited into the employee's account. The dissent's explanation of the change in Section 45–606 made in 1989, however, only tells part of the story.

As originally enacted in 1911, that statute provided:

Whenever any employer of labor shall hereafter discharge or lay off his or its employes without first paying them the amount of any wages or salary then due them, in cash, lawful money of the United States, or its equivalent, or shall fail or refuse on demand to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week or month, each of his or its employes may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default until he is paid in full, without rendering any service therefore; *Provided, however,* he shall cease to draw such wages or salary thirty (30) days after such default.

Ch. 170, § 1, 1911 Idaho Sess. Laws 565. As originally enacted, it was not limited to the failure to pay wages upon termination. It required immediate payment of wages upon termination "in cash, lawful money of the United States, or its equivalent" and payment of wages on demand "in like money, or its equivalent" whenever they had become due. It applied both to wages due on termination and to wages due weekly, semimonthly, monthly, annually, or at any other time.

In 1989 the legislature amended and recodified the statutes in Chapter 6 of Title 45. The new version of Idaho Code § 45–606 provided:

1. Upon layoff, or upon termination of employment by either the employer or employee, the employer shall pay or make available at the usual place of payment all wages then due the employee by the earlier of the next regularly scheduled payday or within ten (10) days of such layoff or termination, weekdays and holidays excluded. However, if the employee makes written request upon the employer for earlier payment of wages, all wages then due the employee shall be paid within forty-eight (48) hours of the receipt of such request, weekends and holidays excluded.

Ch. 280, § 7, 1989 Idaho Sess. Laws 677, 679–80. The amended statute only addresses the payment of wages upon termination.

It does not also apply to the payment of wages on demand at any time they have become due, as did its predecessor. The amended statute also does not include the wording that the wages are to be paid "in cash, lawful money of the United States, or its equivalent."

The dissent interprets this change to mean that the legislature did not intend any restriction upon the manner in which wages were paid upon termination. The dissent would have us believe that the legislature did not think that the protection in Section 45–608(1) regarding the manner of paying wages was necessary when the employee was terminated from employment. Apparently, workers who have just been terminated need less protection than those who still have a job. Thus, according to the dissent, upon termination an employer could pay wages by a warrant redeemable only by presenting it in person at a bank in Timbuktu, and that would comply with the statute. The dissent offers no explanation as to why the legislature would want to eliminate this protection for employees that are terminated from employment.

A more reasonable interpretation of the legislature's intent is that Section 45–608(1) requires that "all wages due" be paid in cash or its equivalent, and amended Section 45–606(1) specifies when wages become due upon an employee being laid off or terminated. Former Section 45–606 imposed a penalty if the employer did not pay any wages due *before* the employee was laid off or terminated. Amended Section 45–606(1) allows the employer to pay the wages within a specified time *after* the employee is laid off or terminated without incurring any penalty. The language "in cash, lawful money of the United States, or its equivalent" that was in the predecessor of Section 45–606(1) is unnecessary because it would merely be duplicative of what is already required by Section 45–608(1), which applies to "all wages due."

■ The Ninth Circuit also asks whether stock options can constitute wages under Idaho Code § 45–613. That statute provides:

No employer shall discharge or in any other manner retaliate against any employee because that employee has made a complaint to the employer, or to the department, or filed suit alleging that the employee has not been paid in accordance with the provisions of this chapter, or because the employee has testified or may be about to testify in an investigation or hearing undertaken by the department. The provisions of this section shall not be construed to otherwise restrict the discipline or termination of an employee.

Although the statute does not include the word *wages*, it prohibits retaliation against an employee for the reasons listed. Paolini alleged that he suffered a retaliatory discharge in violation of this statute. The Ninth Circuit's question regarding this statute is premised upon stock options being held to be wages. It stated, "In this case, if stock options are not wages then no triable issue of fact exists for the wrongful discharge claims under Idaho's wage law. The claims therefore would have to be dismissed." *Paolini v. Albertson's, Inc.*, 418 F.3d 1023, 1026 (9th Cir.2005). Because stock options cannot be wages, the Ninth Circuit's question about Section 45–613 is moot.

**B. If an Employer Fires an Employee for Trying to Exercise His Right to the Receipt of Wages, Has the Employer Violated the Public Policy Exception to At–Will Employment?**

■ This question is dependent upon stock options being determined to be wages under Chapter 6 of Title 45. As the Ninth Circuit stated:

The question of whether Paolini was fired in violation of public policy is dependent, in part, on the answer to the earlier question of whether stock options can be wages. If stock options are wages then a legal question exists over whether firing a person for acting to prevent the withholding of wages is a violation of public policy. A factual question also remains as to whether Paolini was terminated for taking such an action.

*Paolini v. Albertson's, Inc.*, 418 F.3d 1023, 1027 (9th Cir.2005). Because stock options cannot be wages, this question is also moot.

## IV. CONCLUSION

Stock options cannot be wages as that term is used in Chapter 6 of Title 45, Idaho Code.

Justices TROUT and BURDICK concur.

Justice Jones, Dissenting.

I dissent because I believe that both of the certified questions should be answered in the affirmative. Idaho's wage laws were designed to protect employees and to ensure that they receive earned compensation, in whatever form, upon termination of their employment.[1] The Court's decision will deprive those employees who agreed to take company equity in lieu of cash compensation of the protection and benefit of the wage laws.

## 1. Stock Options can be Wages under Idaho Code §§ 45-601(7) and 45-613.

Idaho Code § 45-601(7) broadly defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece or commission basis." This Court has previously held that various forms of compensation, including a deferred incentive compensation account, sales commissions and a share of company profits, severance pay, and year-end bonuses, can constitute wages under this statute. *See Bilow v. Preco, Inc.,* 132 Idaho 23, 28–29, 966 P.2d 23, 28–29; *Polk v. Larrabee,* 135 Idaho 303, 307–9, 17 P.3d 247, 251–3 (2000); *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 367, 679 P.2d 640, 644 (1984); *Goff v. H.J.H. Co.,* 95 Idaho 837, 840, 521 P.2d 661, 664 (1974); *Thomas v. Ballou–Latimer Drug Co.,* 92 Idaho 337, 342, 442 P.2d 747, 752 (1968).

When determining whether a particular item is a wage, this Court has considered whether the item was bargained-for compensation or compensation earned or paid in direct consideration of services rendered, as opposed to being a mere gratuity. *See Johnson,* 106 Idaho at 367, 679 P.2d at 644; *Bilow,* 132 Idaho at 28–29, 966 P.2d at 28–29. If the item was bargained for or paid in direct consideration of services rendered, this Court has found it to be a wage, rather than a gratuity. *Id.* Thus, it would appear that under the definition in section 45–601(7), a stock option can be part of an employee's wage.

Albertson's raises a number of arguments against a holding that stock options can constitute wages. Albertson's contends that the wording of section 45–601(7) excludes compensation in the form of stock options. That is, the words specified as bases for determining the amount of a wage, i.e. "time, task, piece or commission", are meant to be an exhaustive list and the list does not contemplate a bonus. However, this argument has two flaws. First, the list of means for determination of the amount of compensation is not an exhaustive list. Rather, the definition merely states several of the means by which compensation may be calculated. This definition of "wages" has been a part of the wage law since 1967, originally enacted effective July 1, 1967, as I.C. § 45–609.3.1967 Session Laws, ch. 436, § 1, p. 1470. Since the enactment of the definition, the Court has determined that a number of items of compensation that do not fit neatly within the four terms specified for determining the amount of compensation are indeed "wages". They include: severance pay, which is "earned over the entire course of the employment relationship" rather than being earned during a specific pay period (*Thomas,* 92 Idaho at 342, 442 P.2d at 752); a deferred incentive compensation account calculated on the employer's monthly pre-tax profit, (*Bilow,* 132 Idaho at 25, 966 P.2d at 25); and an agreed

---

1. This Court addressed the purpose of the provision of the wage law requiring payment upon discharge or layoff, now I.C. § 45–606, in *Olson v. Idora Hill Mining Co.,* 28 Idaho 504, 511, 155 P. 291, 293 (1916), as follows:

The object of such legislation is to require employers of labor to pay their men promptly and in lawful money when they are discharged or quit, and this object is grounded in the broad principle that labor is property for which due compensation is to be paid upon the performance thereof, and that the laborer is worthy of his hire and should not be required to wait beyond a reasonable time for money he has earned, or for which he has sold his labor. At the time this Court decided *Olson,* the provision requiring payment upon discharge or layoff specified such payment was to be made "in cash, lawful money of the United States, or its equivalent", but the cash requirement was eliminated in 1989 upon passage of the present version of I.C. § 45–606.

compensation scheme whereby an employee was to receive commissions on the sale of homes, together with a percentage of the employer's yearly profits, (*Polk*, 135 Idaho at 307, 17 P.3d at 251). These cases demonstrate that this Court has not regarded the four listed means for determining the amount of compensation to be exhaustive but, rather, demonstrative that a wide range of means are contemplated by the statutory definition of wages.

A second flaw in Albertson's argument is the issuance of stock options can be determined on a time basis. Albertson's acknowledges that Paolini was granted stock options governed by the Plan. According to Albertson's, "[a]fter specified periods of time, the stock options would periodically "vest," allowing Paolini to buy Albertson's stock at the option prices." Thus, a time element was involved in determining the vesting of the options. Upon vesting, Paolini could exercise his right to acquire a known amount of stock at an agreed value.

Albertson's argues that Idaho Code § 45–608, which requires employers to "pay all wages due to their employees at least once during each calendar month," further limits the definition of wages. In essence, Albertson's claims compensation that is not paid at "regular intervals on predetermined dates in an approved form" cannot constitute wages. However, this contention is inconsistent with the wage law and with previous decisions of this Court.

The definition of wages is constant throughout the wage law (chapter 6, title 45, Idaho Code). The only definitional section in chapter 6 is I.C. § 45–601, which states, "Whenever used in this chapter ... (7) 'Wages' means compensation for labor or services rendered by an employee ..." The definition does not include the limiting language suggested by Albertson's.

I.C. § 45–608(1) deals with pay periods and requires that "all wages due" during a particular month be paid at least once during that month. It does not deal with wages that do not become due on a monthly basis, such as severance pay, bonuses based on yearly profits, or other types of compensation earned over a period of time longer than a month. This code section was obviously de-

signed to ensure that workers are timely paid, at least on a monthly basis, as their periodic wages are earned and become due. It does not require payment of wage components that are not yet due.

The wage law contemplates that wages may or may not be tied to a specific pay period. In considering the application of the statute of limitations in former I.C. § 45–608 (now I.C. § 45–614), this Court determined that the six month limitation period applies only "to a claim for additional salary for a *specific pay period* from which an employee has already received some payment of salary or wages." *Johnson*, 106 Idaho at 367, 679 P.2d at 644. The Court continued, "Because severance pay is not attributed to, or earned in a specific pay period, but, is earned over the entire course of the employment relationship, the six-month limitation period is inapplicable to appellant's claim for severance pay." *Id.* In *Thomas*, we dealt with an employee whose "full compensation for each year of the employment was $8,700, plus 25% of the profits." 92 Idaho at 342, 442 P.2d at 752. We stated, "Therefore, in any year when a profit was earned the semimonthly payments were payments on account and did not purport to be full payment for the yearly pay period." *Id.* Thus, the language of section 45–608(1), requiring wages that come due within the month to be paid at least on a monthly basis, does not constitute a narrowing of the definition of wages in section 45–601(7).

The majority asserts that the requirement in section 45–608(1) for wages to be paid "in lawful money of the United States or with checks on banks where suitable arrangements are made for the cashing of such checks without charge to the employee," constitutes a limitation on the definition of wages so as to exclude payment in any medium other than cash. That is, because the statute specifies that wages be paid in money, stock options, which aren't money, can't be wages. However, a careful reading of the applicable statutes leads to a contrary conclusion.

Idaho Code § 45–608(1) deals with payment of wages that become due on a periodic basis. It is understandable the Legislature

would think it appropriate that monthly or weekly wages be paid in cash, rather than in some non-negotiable form such as credits at a company store. Otherwise, one might encounter the situation in *Adamson v. Mattson*, 32 Idaho 493, 185 P. 553 (1919), where the employer claimed he had paid the employee "in full, in cash, by merchandise delivered, and by caring for, feeding, and pasturing horses belonging to him." However, I.C. § 45–608 applies only to wages that become due within the course of the month.

The wage law has a specific provision that applies to Paolini's situation, i.e., where there is a separation from employment. Idaho Code § 45–606 applies to the situation where employment is terminated (rather than to monthly pay periods), and there is no mention of lawful money, cash, or checks. This is particularly significant because, until July 1, 1989, section 45–606 required that an employer pay discharged or laid-off employees "the amount of any wages or salary then due them, in cash, lawful money of the United States, or its equivalent." This version of section 45–606 was repealed in its entirety in 1989 and reenacted with the present language calling for "payment of all wages then due the employee" upon layoff or termination of employment. 1989 Session Laws, ch. 280, §§ 6 and 7, p. 679. The section 45–608 requirement of monetary payment of monthly wages was retained in the 1989 rewrite of the wage law. *Id.*, § 9, p. 680. By virtue of having eliminated the requirement that wages be paid in cash upon termination of employment, one can reasonably assume the Legislature intended to allow payment in such other form as the parties may have agreed.

Albertson's contends that stock options are a fixed benefit of employment status, rather than compensation for services rendered. That is, they are a benefit generally available to employees merely because of their employment status. In support of this contention, Albertson's cites *Whitlock v. Haney Seed Co.*, 114 Idaho 628, 759 P.2d 919 (Ct. App.1988), where the Court of Appeals opined that the cash value of a life insurance policy did not constitute wages where the proceeds of the policy were to be paid to the employee at retirement or to his heirs upon his death. The Court of Appeals character-

ized the insurance policy as a fixed benefit of employment status. *Id.* at 634, 759 P.2d at 925. The Court of Appeals noted the insurance policy was unlike compensation paid in direct consideration of services rendered, in amounts over and above an employee's regular paychecks. As noted below, the stock options here may constitute this type of compensation. The Court of Appeals did not consider whether the options were part of the bargained-for compensation, a critical inquiry in this Court's previous decisions. *See, e.g. Johnson*, 106 Idaho at 367, 679 P.2d at 644. Most recently, we stated with regard to I.C. § 45–601(7), "The definition of 'wage' includes any ascertainable unpaid commissions and bargained-for compensation." *Moore v. Omnicare, Inc.*, 141 Idaho 809, 819, 118 P.3d 141, 151 (2005). If an item of compensation is bargained for between the parties, it would be difficult to characterize it as a fixed benefit of employment status.

Here, the Plan appears to be designed to target certain employees, rewarding them for their past performance and providing an incentive for more of the same in the future. Two of the stated Plan purposes are to enable the company to "attract and retain the best available personnel" and to "provide key employees ... with an opportunity for investment in the Company's Common Stock, to give them an additional incentive to increase their efforts on behalf of the Company ..." The Plan limits employee eligibility to "key" employees, who are to be identified by considering their position and responsibilities, their value to the company, their services and accomplishments, and their present and potential contribution to the success of the company. Albertson's Compensation Committee, which administered the Plan, awarded Paolini an option to purchase 49,181 shares of stock on December 9, 1999, "in recognition of [his] significant continuing efforts in connection with the integration of the new Albertson's." This award was reduced to a written agreement that was executed by the parties in December of 1999. The Compensation Committee awarded Paolini an additional option to purchase 57,637 shares of stock on December 15, 2000, in recognition of his "significant contribution in continuing to build an even stronger Albertson's." The

parties entered into a written agreement for this award in December of 2000. Both of the option agreements incorporated the provisions of the Plan, which contains certain provisions relating to the conditions of the employment of an employee/optionee, including a provision (section 11) reiterating that Albertson's retained the right to demote or discharge the employee for any reason at any time.

The Plan does not appear to contemplate that employees will receive stock options simply as a result of their employment status. Rather, the options are targeted to certain employees, partly as a reward for good past performance and partly as an incentive to stay with the company and continue advancing its interests. Both of the awards made to Paolini recognized his past contribution to the company. When the employer uses this criterion for awarding stock options to an employee, the stock options are in direct consideration of services rendered and can be wages under I.C. § 45–601(7).

Albertson's has failed to point to any Idaho statute or case law which would preclude stock options from being classified as wages when they are granted in direct consideration of services rendered. Instead, Albertson's relies upon a California case that held stock options could not be wages because they were not "amounts," but were contractual obligations to purchase stock. *IBM v. Bajorek,* 191 F.3d 1033, 1039–40 (9th Cir. 1999). While I.C. § 45–601(7) uses the word "amount," Idaho's wage law has been interpreted more broadly than California's. In *Polk v. Larrabee,* the employer unsuccessfully asserted that the "amount" employees claimed was not ascertainable for purposes of the trebling provisions of I.C. § 45–617 because the wages were based on commissions for sales of homes, some of which had not closed by the time of the termination of their employment. 135 Idaho at 308, 17 P.3d at 252. This Court held that any difficulty in determining the amount owing as of the date of the employee's demand for payment upon termination was not a problem because the amount would be determined by the trier of fact. According to the Court, "The statute does not refer to the amount of wages that the parties agreed were owing, but the

amount that is found to be owing." 135 Idaho at 309, 17 P.3d at 253.

With regard specifically to stock options, the amount owing at the time of termination can readily be determined by mathematical calculation, using the number of shares for which the purchase option has been exercised, times the option price, less the fair market value of the shares as of the time of exercise. Indeed, this is the manner in which the Idaho State Tax Commission calculates income attributable to stock options. *See* IDAPA 35.01.01.271 (Rule 271). The Tax Commission regulation states, "The granting of stock options is considered to be compensation for services." Although compensation is deemed to be realized at the date the option is exercised, it is not taxable until the income or gain is recognized for federal income tax purposes. Taxable compensation is the portion of the gain that equals the difference between the option price and the fair market value of the stock at the date the option is exercised. Thus, the amount of compensation can readily be calculated.

Further, stock options can be part of the bargained-for compensation for which the employer receives services. This Court has said the "definition of 'wage' includes any . . . bargained-for compensation." *Moore,* 141 Idaho 809, 819, 118 P.3d 141, 151 (2005). Whether compensation was bargained for in a particular instance is a question of fact, which requires an examination of the initial terms and conditions of employment and any subsequent modifications thereof. Paolini may argue that the stock option grants and agreements modified his employment agreement with Albertson's to include bargained-for compensation in the form of stock options. Whether an employment contract has been modified to include or exclude certain types of compensation is a question of fact. *See, Johnson,* 106 Idaho at 368–9, 679 P.2d at 645–6.

Therefore, I would hold that stock options can be wages under Idaho Code §§ 45–601(7) and 45–613. In determining whether stock options do constitute wages in a particular circumstance, it is necessary to conduct a factual inquiry. While the question of

whether stock options *can* constitute wages is a question of law, the question of whether particular stock options *are* wages under I.C. § 45–601(7) is a question of fact. In my estimation the fact finder should make a three-part inquiry: (1) whether the stock options were either (a) part of the bargained-for compensation or (b) awarded or earned in direct consideration of services rendered; (2) whether the employee had a vested right to exercise the stock options; and (3) whether the employee exercised or attempted to exercise the vested stock options during the employment relationship.

First, the finder of fact should establish whether the stock options were either part of the bargained-for compensation or were awarded or earned in direct consideration of services rendered. *See Moore*, 141 Idaho at 819, 118 P.3d at 151 (the "definition of 'wage' includes any ... bargained-for compensation"); *Bilow*, 132 Idaho at 28–30, 966 P.2d at 28–29 (items awarded or earned in direct consideration of services rendered over and above the employee's regular paychecks are wages). In determining whether options are bargained-for compensation, one must examine the employment agreement between the parties. In determining whether options are granted in consideration for services rendered, one may look to the eligibility requirements contained in the stock option plan. The following language contained in the current Plan may suggest that the stock options were awarded in direct consideration of services rendered: when determining eligibility, the "Administrator ... shall consider the position and responsibilities of the Employee ... being considered, the nature and value to the Company ... of the Employee's ... services and accomplishments, [and] the Employee's ... present and potential contribution to the success of the Company." If it is found that the stock options were part of the bargained-for compensation or were awarded in direct consideration of services rendered, the fact finder must consider a second question explained in the subsequent paragraph. If not, the stock options do not constitute wages under I.C. § 45–601(7).

Second, the fact finder must determine whether the employee has a vested right to exercise the stock options. As is explained in the current Plan, stock options may vest according to a specific date chosen by the employer at the time it awarded the stock options or they may become subject to accelerated vesting, the conditions of which would most likely also be explained in the stock option agreement. Either way, stock options become due and owing to the employee when they vest because only then is the employee eligible to exercise them if he chooses to do so. As a result, the employer is contractually obligated to allow the employee to exercise any vested stock options.

Third, the finder of fact must determine whether the employee exercised or attempted to exercise any vested stock options during the course of the employment. Upon exercise, the options become wages and the value or amount of compensation is then determined for purposes of the wage law (as well as for purposes of Idaho's income tax).

Consequently, I would hold that stock options constitute wages under I.C. § 45–601(7) when: (1) the stock options were either part of the bargained-for compensation or were awarded in direct consideration of services rendered; (2) the stock options have vested; and (3) the employee exercised or attempted to exercise the vested stock options before termination of his employment. In other words, to come within the definition of "wages" for the wage law, stock options must be exercisable and exercised before termination of the employment so that the employee has the right to obtain "payment" thereof, i.e. issuance of the stock, upon termination.

**2. Whether the Employer Violates the Public Policy Exception to At-will Employment when it Terminates the Employee for Attempting to Exercise His Right to Receipt of Withheld Wages.**

In Idaho, unless otherwise agreed, employment is at will and employers or employees are free to terminate the employment relationship at any time, with or without cause. An exception to this doctrine is that "an employer may be liable for wrongful discharge when the motivation for discharge contravenes public policy." *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 176, 75 P.3d 733, 737 (2003). This public policy exception "has been held to protect

employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges." *Id.* "Public policy of the state is found in the constitution and statutes." *Id.*, at 177, 75 P.3d at 738. "The determination of what constitutes public policy sufficient to protect an at-will employee from termination ... is a question of law." *Mallonee v. State*, 139 Idaho 615, 621, 84 P.3d 551, 557 (2004).

In the current case, Paolini contends that Albertson's violated the public policy exception to at-will employment when it allegedly terminated him after he attempted to exercise his stock options. He contends that a violation of Idaho Code § 45–613, which prohibits retaliation against employees who complain or allege they have not been paid in accordance with the wage law, should give rise to a cause of action for wrongful termination in violation in public policy. Section 45–613 states, in pertinent part:

> No employer shall discharge or in any other manner retaliate against an employee because that employee has made a complaint to the employer, or to the department, or filed suit alleging that the employee has not been paid in accordance with the provisions of this chapter, or because the employee has testified or may be about to testify in an investigation or hearing undertaken by the department.

This is a clear declaration of the State's public policy. In determining whether the public exception applies, we "balance the competing interests of society, the employer, and the employee in light of modern business experience." *Crea v. FMC Corporation*, 135 Idaho 175, 178, 16 P.3d 272, 275 (2000).

No previous decision of this Court has held retaliation in violation of I.C. § 45–613 to constitute grounds for application of the public policy exception. However, *Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 208, 61 P.3d 557, 565 (2002), provides some helpful guidance in its distillation of what the Court held in *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 799 P.2d 70 (1990). The Court said:

> This Court has also indicated that the public policy exception would be applicable if an employee were discharged, for example for refusing to date her supervisor, for filing a worker's compensation claim, or for serving on jury duty. *Sorensen*, 118 Idaho at 668, 799 P.2d at 74.... In *Sorensen*, the Court stated that if the reported conduct constituted a statutory violation, it would ... more likely fall under the protection of the public policy exception to the at-will doctrine.

In balancing the various interests involved, it is appropriate to consider the statutory protection provided in section 45–613 along with the other employee protections provided in the wage law. I.C. § 45–607 provides for additional wages to accrue as a penalty where wages are not paid when due. I.C. § 45–615 allows for the trebling of an award of unpaid wages, as well as an award of attorney fees. Other provisions of the wage law provide certain preferences for unpaid wages, lien claims, and state enforcement. However, these protections apply to all employees who claim unpaid wages upon termination, whether or not they were terminated *because* they demanded payment of their wages. If the Legislature did not intend additional relief for those who were wrongfully terminated for asking to be paid, there would be no purpose in enacting I.C. § 45–613. The only purpose for enactment of the section would be to establish a distinct cause of action for violating the terms of the provision or to state a public policy that would allow a wrongfully terminated employee to invoke the public policy exception. Therefore, I would hold that an employee who is terminated in violation of I.C. § 45–613 is entitled to pursue a claim against the employer for violation of the public policy exception. I would not hold, as Paolini would wish, that the employee can assert the public policy exception on behalf of others. It appears clear from the language of the statute that the Legislature intended the protection provided therein to be for the personal benefit of the wronged employee.

Chief Justice SCHROEDER concurs.