**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRUCE P. PAOLINI,
　　　　　　*Plaintiff-Appellant,*

　　　　　v.

ALBERTSON'S INC.; PLAN
ADMINISTRATOR, of Albertson's
amended and restated stock-based
incentive plan,
　　　　　　*Defendants-Appellees.*

No. 03-35724

D.C. No.
CV-02-00041-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued February 22, 2005
Submitted March 16, 2005
Submission Vacated August 10, 2005
Submitted April 6, 2007
Seattle, Washington

Filed April 6, 2007

Before: Betty B. Fletcher and Ronald M. Gould,
Circuit Judges, and Samuel P. King,* District Judge.

Opinion by Judge B. Fletcher

*The Honorable Samuel P. King, Senior United States District Judge
for the District of Hawaii, sitting by designation.

**COUNSEL**

Bruce P. Paolini, Pro se, Virginia Beach, Virginia, plaintiff-counterdefendant-appellant,

J. Walter Sinclair, Harry S. Chandler, & Wade L. Woodard, Stoel Rives LLP, Boise, Idaho, for defendant-

counterclaimant-appellee Albertson's, Inc., and defendant-appellee the Plan Administration of Albertson's Amended and Restated Stock-Based Incentive Plan.

## OPINION

B. FLETCHER, Circuit Judge:

Bruce P. Paolini ("Paolini") appeals the district court's grant of summary judgment to the defendants—Paolini's former employer Albertson's, Inc. and the Administrator of Albertson's, Inc.'s Stock-Based Incentive Plan (the "Plan Administrator"), (collectively "Albertson's").

### I.

Paolini was an employee of Albertson's for seventeen years. He advanced to the position of Senior Vice President of Labor Relations and Employment Law. During Paolini's time at Albertson's he received several thousand stock options. The options were issued pursuant to the Albertson's Amended and Restated 1995 Stock-Based Incentive Plan (the "Plan"). According to the Plan, a "Change in Control" at the company accelerated the vesting of the stock options.

It is undisputed that in March 2001 Albertson's adopted new Corporate Governance Guidelines, and that, pursuant to the Guidelines, the Board of Directors reduced its size. Six directors resigned in June 2001. That month Albertson's also announced a significant restructuring plan that was to include store closures, division consolidations, and process streamlining.

Paolini communicated to the company that he believed these changes amounted to a change in control, and he attempted to exercise his stock options based on accelerated

vesting, under Section 13(a) of the Plan. The Plan Adminis-trator denied his request on the grounds that the events did not constitute a change in control as defined by the Plan.

Soon after Paolini raised the issue of a change in control and the attendant accelerated vesting of stock options, he left his employment at Albertson's. The parties dispute the factual circumstances of his departure.

On January 31, 2002, Paolini initiated this suit, challenging the Plan Administrator's decision and alleging that he had been wrongfully terminated. Albertson's counterclaimed for monies due under a promissory note. The district court granted summary judgment in Albertson's favor.

Paolini's appeal raises three issues. First, he argues that summary judgment was improper because material, disputed facts remain as to whether certain events which occurred in 2001 accelerated the vesting of certain stock options he pos-sessed. Second, Paolini contends that the district court erred when it determined that, as a matter of law, he had not been wrongfully discharged. Paolini maintains that he was wrong-fully terminated in violation of Idaho's wage laws, public pol-icy, and the covenant of good faith and fair dealing. Finally, Paolini argues that the district court erred when it granted summary judgment to Albertson's on its counterclaim, hold-ing that he owed Albertson's the principal and interest due on a promissory note that had been extended to him. Because we find that none of these arguments has merit, we affirm the dis-trict court's ruling.

## II.

In granting Albertson's motion for summary judgment, the district court agreed with the Plan Administrator's determina-tion that Paolini's stock options did not vest in 2001,[1] as do we.

---

[1]Paolini contests the deferential standard applied by the district court in its review of the Plan Administrator's decision. We need not determine

**[1]** The relevant contractual clause—Section 13(c) of the Plan—provided:

> "Change in Control" shall mean the occurrence in a single transaction or series of transactions of any one of the following events or circumstances . . . (ii) merger, consolidation, or reorganization of the Company where 20% or more of the incumbent directors of the Company are changed.

Paolini argues that "20% or more of the incumbent directors . . . changed" in 2001. This, however, is irrelevant, because Paolini has not alleged facts that would constitute a "merger, consolidation, or reorganization," as required by Section 13(c).[2]

### III.

Paolini claims that he was wrongfully discharged in retaliation for asserting that he and others were entitled to accelerated vesting and for acting to exercise his stock options. He argues this was a violation of Idaho's wage laws, public policy, and the covenant of good faith and fair dealing.

---

whether this standard was proper, however, because we affirm, upon *de novo* review, the substance of the Administrator's decision. We find that Paolini has not raised a genuine triable issue as to whether a "Change in Control" occurred in 2001.

[2]We understand the Plan's requirement of a change of 20% or more of the incumbent directors to supply a modifier, but not a definition, for the term "reorganization." We rely on the commonly understood definition of "reorganization" in a corporate context. *See, e.g.*, 19 Am. Jur. 2d Corporations §§ 2306 (citing, for example, *People ex rel. Barrett v. Halsted Street State Bank*, 14 N.E.2d 872, 877 (Ill. App. Ct. 1938)), 2309; 15 Fletcher Cyclopedia of the Law of Private Corporations §§ 7201, 7202, 7205, 7215-16 (2006); *see also Whicher v. Delaware Mines Corp.*, 15 P.2d 610 (Idaho 1932).

### A.

Because resolution of Paolini's wrongful discharge claims as related to Idaho's wage laws and Idaho's public policy presented matters of first impression under Idaho law, we certified the following questions to the Idaho Supreme Court:

> 1. Can stock options be wages under Idaho Code sections 45-601(7) and 45-613? If so, is it a factual issue as to whether the stock options were issued as wages, to be resolved by a factfinder?
>
> 2. If an employer fires an employee for trying to exercise his right to the receipt of wages, has the employer violated the public policy exception to at-will employment?

*Paolini v. Albertson's, Inc.*, 418 F.3d 1023, 1024 (9th Cir. 2005) ("*Paolini I*").

[2] The Idaho Supreme Court granted our request and provided its answer in *Paolini v. Albertson's Inc.*, 149 P.3d 822 (Idaho 2006) ("*Paolini II*"). The court held in *Paolini II* that stock options do not constitute wages under Chapter 6 of Title 45 of the Idaho Code. *Id.* at 825.[3]

[3] As we noted in *Paolini I*, "if stock options are not wages then no triable issue of fact exists for the wrongful discharge claims under Idaho's wage law." 418 F.3d at 1026. Since the Idaho Supreme Court held that stock options are not wages, we must affirm the district court's dismissal of Paolini's claim that he was terminated for pursuing a wage

---

[3]Because the court held that stock options are not wages, it concluded that our second question was moot. Accordingly, the court did not consider whether an employee's attempt to exercise his right to the receipt of wages is protected such that firing an employee for those actions would violate the public policy exception.

complaint, in violation of Idaho Code § 45-613. *Cf. Reinkemeyer v. SAFECO Ins. Co. of America*, 166 F.3d 982, 984 (9th Cir. 1999) ("We are bound by the answers of state supreme courts to certified questions . . . .").

**[4]** For the same reason, we affirm the district court's dismissal of Paolini's claim that his termination was contrary to Idaho's "public policy exception" to the at-will employment relationship. *Cf. Edmondson v. Shearer Lumber Products*, 75 P.3d 733, 737 (Idaho 2003) ("[A]n employer may be liable for wrongful discharge when the motivation for discharge contravenes public policy."). If, as the Idaho Supreme Court concluded, stock options are not wages, Paolini's assertion of his entitlement to the options is not protected as a matter of public policy. *See, e.g.*, *id.* at 738-39 (holding that the exception does not include protecting an employee's constitutional right of free speech). Paolini has not raised any genuine issue of fact with regard to any other ground for applying the public policy exception.

## B.

**[5]** According to the Idaho Supreme Court, at-will employees are afforded an implied covenant of good faith and fair dealing. *See Mitchell v. Zilog, Inc.*, 874 P.2d 520, 526 (Idaho 1994); *Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 749 (Idaho 1989).

> The implied-in-law covenant of good faith and fair dealing protects the rights of the parties to an agreement to receive the benefits of the agreement that they have entered into. . . . A breach of this covenant occurs when a party takes any action which 'violates, nullifies, or significantly impairs' the rights or benefits due under the existing contract.

*Parker v. Boise Telco Fed. Credit Union*, 923 P.2d 493, 501 (Idaho Ct. App. 1996) (quoting *Metcalf*, 778 P.2d at 749).

Continued employment, of course, does not itself constitute a benefit inherent in an express or implied at-will agreement. *Id.*

**[6]** Paolini argues that Albertson's breached the covenant of good faith and fair dealing by firing him for trying to exercise his stock options. However, as of the summer of 2001, the stock options were not benefits due Paolini, and he possessed no right to exercise the options at that time. Therefore, Paolini was not denied "rights or benefits due," and we affirm the district court's determination that no breach occurred.

## IV.

The following facts are undisputed: while employed by Albertson's, Paolini invested on margin in Albertson's stock. The value of the stock fell. Albertson's Credit Union issued several margin calls. Paolini borrowed money— approximately $560,000 in total—from Albertson's to cover the margin calls.

Paolini signed a promissory note for an initial loan from Albertson's on November 8, 1999. This original note was due February 3, 2000. Albertson's lent money to Paolini on three subsequent occasions, and the due date for the entire loan was extended to February 1, 2001.

Two days before Paolini signed the fourth and final loan agreement, he sent a letter to the company outlining a repayment schedule. The letter suggested a repayment date of January 1, 2002. However, the fourth loan agreement—which Paolini signed two days after sending the letter—states a due date of February 1, 2001.

After Paolini commenced the instant action, Albertson's filed a counterclaim, arguing Paolini owes the company the balance due (that is, the full principal and accumulated interest) on the promissory note lent to cover the margin calls on

his stock. Paolini counters that the loan was contingent on his continued employment and, because he separated from Albertson's before the note was due, he is not liable for the balance. Paolini further argues the note created a limitation on the at-will employment relationship and that Albertson's violated the note by firing him.

**[7]** There is no genuine issue of material fact presented here, nor legal error in the district court's disposition of the promissory note claim. The due date of the loan is determinative. Although Paolini's letter proposed a later due date, he signed a final agreement on September 13, 2000 that provides a due date of February 1, 2001. The loan was therefore due before Paolini separated from Albertson's, and the subsequent conflict between the parties has no effect upon the promissory note. We affirm the district court's grant of summary of judgment to Albertson's on this counterclaim.

**AFFIRMED.**